# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

_____

2015-1030, -1031, -1032, -1035, -1036

_____

**MORRIS REESE,**
*Plaintiff/Appellant,*

**v.**

**SPRINT NEXTEL CORPORATION,**
*Defendant/Appellee.*

_____

2015-1030

_____

Appeal from the United States District Court for the Central District of California in Case No. 2:13-cv-03811-ODW-PLA, Judge Otis D. Wright, II.

*(caption continued on next page)*

_____

## PLAINTIFF-APPELLANT'S NEW OPENING BRIEF

_____

Andrew J. Dhuey
456 Boynton Avenue
Berkeley, California 94707
(510) 528-8200

*Attorney for Plaintiff-Appellant,*
*Morris Reese*

November 23, 2015

**MORRIS REESE,**
*Plaintiff/Appellant*,

**v.**

**TRACFONE WIRELESS, INC., ERRONEOUSLY
SUED AS TRACFONE WIRELESS SERVICES, INC.,**
*Defendant/Appellee.*
_____

2015-1031
_____

Appeal from the United States District Court for the
Central District of California in Case No. 2:13-cv-05196-ODW-
PLA, Judge Otis D. Wright, II.
_____

**MORRIS REESE,**
*Plaintiff/Appellant*,

**v.**

**T-MOBILE USA, INC.,**
*Defendant/Appellee.*
_____

2015-1032
_____

Appeal from the United States District Court for the
Central District of California in Case No. 2:13-cv-05199-
ODW-PLA, Judge Otis D. Wright, II.

*(caption continued on next page)*

_____

**MORRIS REESE,**
*Plaintiff/Appellant*,

**v.**

**VERIZON WIRELESS SERVICES LLC, ERRONEOUSLY
SUED AS CELLCO PARTNERSHIP d/b/a VERIZON WIRELESS,**
*Defendant/Appellee.*
_____

2015-1035
_____

Appeal from the United States District Court for the Central District of California in Case No. 2:13-cv-05197-ODW-PLA, Judge Otis D. Wright, II.

_____

**Morris Reese,**
*Plaintiff/Appellant,*

**v.**

**AT&T Mobility II LLC,**
*Defendant/Appellee.*

_____

2015-1036
_____

Appeal from the United States District Court for the Central District of California in Case No. 2:13-cv-05198-ODW-PLA, Judge Otis D. Wright, II.

## <u>CERTIFICATE OF INTEREST</u>

Appellant certifies the following:

1. The full name of every party or amicus represented by me is:

   Appellant Morris Reese

2. The name of the real party in interest represented by me is:

   Appellant Morris Reese

3. All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

   None

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

   Corby R. Vowell of Friedman, Suder & Cooke
   Andrew J. Dhuey

# <u>TABLE OF CONTENTS</u>

**CERTIFICATE OF INTEREST** ............................................................ I

**STATEMENT OF RELATED CASES** ................................................ VI

**JURISDICTIONAL STATEMENT** .................................................. VII

**STATEMENT OF THE ISSUES** ..................................................... VIII

**STATEMENT OF THE CASE** .............................................................. 1

**STATEMENT OF THE FACTS** ............................................................ 5

**SUMMARY OF THE ARGUMENT** ..................................................... 9

**ARGUMENT** .................................................................................... 10

   A.  Standard of Review .................................................................... 10

     *1.  Summary Judgment determinations are reviewed de novo.* ........................ *10*

     *2.  Discovery rulings are reviewed for an abuse of discretion.* ...................... *10*

   B.  The District Court reversibly erred in resolving material questions of fact against Reese. .......................................................................... 11

   C.  The District Court abused its discretion in denying Reese's request for discovery under Federal Rule of Civil Procedure 56(d). ................................... 15

   D.   The District Court clearly erred in granting Appellees' Motions for Summary Judgment of Laches when it held that there is no evidence that Appellees had notice of Reese's involvement in other enforcement litigation................17

 **CONCLUSION**........................................................................... .19

**ADDENDUM** .................................................................................... 21

**CERTIFICATE OF COMPLIANCE**................................................. 22

**PROOF OF SERVICE** ..............................................................................................**23**

# TABLE OF AUTHORITIES

**Cases**

*A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*,
   960 F.2d 1020 (Fed. Cir. 1992) (en banc) ........................................ 8, 11, 13, 14,

*Augustine Med., Inc. v. Progressive Dynamics, Inc.*,
   194 F.3d 1367, 1371 (Fed. Cir. 1999) ...................................................11

*Diego, Inc. v. Audible, Inc.*,
   505 F.3d 1362, 1370 (Fed. Cir. 2007) ...................................................10

*eBay, Inc. v. MercExchange, L.L.C.*,
   126 S.Ct. 1837, 1839-40 (2006) .........................................................12

*Gasser Chair Co. v. Infanti Chair Mfg. Corp.*,
   60 F.3d 770, 773 (Fed. Cir. 1995) .........................................................8

*Goehring v. Brophy*,
   94 F.3d 1294, 1305 (9th Cir.1996) .......................................................11

*Hall v. Aqua Queen Mfg., Inc.*
   93 F.3d 1548, 1554 (Fed. Cir. 1996)……………………………………………..17

*Hallett v. Morgan*,
   296 F.3d 732, 751 (9th Cir. 2002) ........................................................10

*Hazelquist v. Guchi Moochie Tackle Co.*,
   437 F.3d 1178, 1180 (Fed. Cir. 2006) ...................................................11

*Kling v. Hallmark Cards, Inc.*,
   225 F.3d 1030, 1041 (9th Cir. 2000) .....................................................15

*Laub v. U.S. Dep't of Interior*,
   342 F.3d 1080, 1093 (9th Cir. 2003) .....................................................16

*Martel v. County of Los Angeles*,
   56 F.3d 993, 995 (9th Cir. 1995) (*en banc*)............................................16

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    572 U.S. ---, 134 S. Ct. 1962 (2014) ..................................................................3

*Petrella v. Metro-Goldwyn-Mayer, Inc.*,
    695 F.3d 946, 951 (9th Cir. 2012) ................................................ 13, 14

*Rome Grader & Mach. V. J.D. Adams Mfg. Co.*,
    135 F.2d 617, 619 (7th Cir. 1943) ......................................................13

*Sablan v. Dep't of Fin.*,
    856 F.2d 1317, 1321 (9th Cir.1988) ..................................................11

*Wanlass v. Fedders Corp.*,
    145 F.3d 1461, 1463 (Fed. Cir. 1998) ................................. 8,10,11,13

**Statutes**
28 U.S.C. § 1295(a)(1) ........................................................................ vii
28 U.S.C. § 1338(a) ............................................................................ vii
35 U.S.C. § 286 .................................................................................... vi

**Rules**
Fed. R. Civ. P. 56 ......................................................................... 13, 14
Federal Rule of Civil Procedure 56(d) ............................................. 9, 15
Rule 26(b)(1) ................................................................................ 15, 16

## <u>STATEMENT OF RELATED CASES</u>

*Reese v. Sprint Nextel Corporation*; Case No. 15-1030, appeals from the Central District of California, Case No. CV13-03811;

*Reese v. TracFone Wireless, Inc.*; Case No. 15-1031, appeals from the Central District of California, Case No. CV13-05196

*Reese v. T-Mobile USA, Inc.*; Case No.15-1032, appeals from the Central District of California, case No. CV13-05199;

*Reese v. Verizon Wireless Servs. LLC*; Case No. 15-1035, appeals from the Central District of California, Case No. CV13-05197; and

*Reese v. AT&T Mobility II LLC*; Case No. 15-1036, appeals from the Central District of California, Case No. CV13-05198.

The *SCA* en banc decision was issued in September 2015 and, if Supreme Court review is sought and granted, a reversal by the Supreme Court of the en banc decision of this Court in *SCA* would impact resolution of this appeal.

The arguments concerning the Statute of Limitations prescribed by Congress under 35 U. S. C. Section 286 based on the Supreme Court case on *Petrella* is an issue that has been resolved by the Federal en banc Court in September 2015 against Reese's position, and the arguments are incorporated by reference to Reese's opening brief previously-filed in this Court. The reference is being done to avoid potential waiver of the arguments if the Supreme Court reverses in *SCA*.

## <u>JURISDICTIONAL STATEMENT</u>

Plaintiff invoked federal question jurisdiction before the District Court under 28 U.S.C. § 1338(a). Final judgment was entered on September 23, 2014, and Reese timely appealed on October 1, 2014.  This Court has appellate jurisdiction under 28 U.S.C. § 1295(a)(1).

## STATEMENT OF THE ISSUES

1.      Whether the District Court improperly adjudged genuine issues of material fact in granting Defendants' Motions for Summary Judgment of Laches?

2.      Whether the District Court abused its discretion in denying Reese's request for discovery under Federal Rule of Civil Procedure 56(d), prior to ruling on Defendants' Motions for Summary Judgment of Laches?

3.      Whether the District Court clearly erred in granting Defendants' Motions for Summary Judgment of Laches to bar Reese's when the District Court held that there is no evidence that Defendants had notice of Reese's involvement in "other litigation"?

## STATEMENT OF THE CASE

Plaintiff-Appellant, Morris Reese ("Reese"), appeals from the Orders granting Summary Judgment of Laches in favor of Defendants-Appellees Sprint Nextel Corporation (A394-417), TracFone Wireless, Inc. (A3199-3211); Verizon Wireless Services, LLC (A2779-2789); AT&T Mobility II, LLC (A2361-2373) and T-Mobile USA, Inc. (A1638-1649) (referred to collectively as "Appellees"). Reese asserts that the District Court erred in granting Appellees' Motions for Summary Judgment because in doing so, it invaded the purview of the jury by determining issues of material fact. Further, the District Court abused its discretion in denying discovery requested by Reese prior to the grants of summary judgment.

On May 29, 2013, Reese filed suit in the United States District Court for the Central District of California against Appellees, alleging infringement of U.S. Patent No. 6,868,150 (referred to herein as "the '150 Patent"). A009-038. Generally, the '150 Patent is directed to a method of providing the combined call waiting/caller ID service through the terminating central office of a cellular telephone service provider. *See, e.g.*, A030-35. The claimed technology allows a called party, who subscribes to both Call Waiting and Caller ID that operates in conjunction with each other and who is already engaged in a call, to receive an audible notification and maybe Caller ID information associated with a calling third party. *Id.* That Caller ID information is routed through the cellular company's

terminating central office switching equipment associated with the called party. *Id.* Reese's Complaint alleged that Appellees infringe the '150 Patent by making, using, selling, or offering to sell cellular services that include the combined Call Waiting/Caller ID feature. A009-023.

The District Court directed that the case be severed and refiled by Reese into the five cases that are appealed from here. A039-042. The cases were consolidated for pre-trial purposes, with the case against Sprint Nextel Corporation functioning as the lead case. A054-58. Appellees sought leave to file motions for summary judgment on laches. A282-289; 877-881. Reese opposed the requested leave, citing outstanding issues of material fact and discovery necessary to resolve those factual issues. A236-242. The District Court granted each Appellee the requested leave (A245-46; A302-03; A1729-30; A2779-89; and A2858-59), and Motions for Summary Judgment under the doctrine of laches were filed in each of the five separate cases. A304-384; A889-950; A1731-69; A2437-2735; and A2860-2897. Reese opposed Appellees' Motions for Summary Judgment and included within his opposition a request under Federal Rule of Civil Procedure 56(d) that the District Court defer its determination to allow him sufficient time to address Appellees' discovery deficiencies, as well as to take relevant discovery related to the prejudice or injury alleged in Appellees' Motions for Summary Judgment, and to the Appellees' first use or offer of their infringing Call Waiting ID service.

Reese indicated to the Court that given the time which he was allowed for responding to Appellees' Motions for Summary Judgment, deferring Appellees' motions to some later date or allowing him to obtain relevant discovery would be especially appropriate. A385-526; A1526-50; A2285-97; A2736-46; and A3133-42. The District Court, without even considering or acknowledging Reese's filed Opposition to Appellees' Motions for Summary Judgment, granted each of Appellees' Motions for Summary Judgment, thereby denying Reese's requested discovery.  A394-417; A1638-49; A2361-73; A2779-89; and A3199-3211.

Subsequent to the District Court's decisions on Appellee's Motions for Summary Judgment, the United States Supreme Court issued its decision in *Petrella v. MGM*, finding that laches could not be invoked to preclude a claim for damages brought within an applicable statutory limitations period. *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 572 U.S. ---, 134 S. Ct. 1962 (2014). Reese sought reconsideration from the District Court in light of the *Petrella* decision. A679-725; A737-42; A801-07. The District Court reconsidered but reaffirmed its decision granting Appellees' Motions to Compel.  The District Court entered final judgment in favor of each Appellee on September 23, 2014. A830-32. Reese timely appealed.

Shortly before Reese appealed to this Court, a similar case was appealed from the United States District Court for the Western District of Kentucky, in

which Appellant SCA Hygiene Products ("SCA") sought reversal of the District Court's application of laches to bar its patent infringement claims against First Quality Baby Products. *See SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC,* 767 F.3d 1339 (Fed. Cir. 2014). This Court affirmed the lower court's finding in SCA but granted SCA's request for rehearing *en banc*. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, No. 2013-1564, 2014 WL 746970 (Fed. Cir. Dec. 30, 2014). Reese's appeal was stayed pending the outcome of the SCA rehearing. On September 18, 2015, the *en banc* Court affirmed the previous panel ruling and the holding of the District Court, holding that the application of laches did not improperly restrict the legislative intent of the statute of limitations in 35 U.S.C. § 286. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*, No. 2013-1564, 2015 WL 5474261 (Fed. Cir. Sept. 18, 2015). The stay on Reese's appeal was lifted, and Reese was directed to file a new Opening Brief. Doc. No. 57.

## **STATEMENT OF THE FACTS**

Plaintiff-Appellant Reese is the sole inventor and owner of the '150 Patent, which issued on March 15, 2005. A014-15. As part of a campaign to license the '150 patent to telecommunications companies, counsel for Reese sent a licensing offer to Sprint Nextel Corporation, now Sprint Corporation, on April 13, 2005. A320-25; A420-24; and A2516-53. Reese's letter to Sprint identified his ownership interest in the '150 Patent, directed Sprint in particularly to claims 25 and 36 (which are not even at issue in the present case) of the '150 Patent, and offered Sprint the opportunity to enter licensing discussions. *Id.* Reese suggested to Sprint that it would require a license to the '150 Patent if Sprint was offering Call Waiting ID service to its customers, but he did not allege infringement or threaten Sprint with a lawsuit if it declined to take a license. *Id.* In fact, there is no reference to infringement or litigation anywhere in Reese's licensing letter.

In addition to the license offered to Sprint, Reese also sent licensing offers to other cellular wireless mobile telephone companies, including Appellees Verizon and T-Mobile. *Id.* Reese did not provide a licensing offer to ATT Mobility, which did not exist before 2007. A421. As was the case with the letter to Sprint, Reese did not assert that either Verizon or T-Mobile infringed any claims of the '150 Patent or that they would be sued if they failed to take a license. *Id.*

Reese did not provide a licensing offer to AT&T Mobility, as it did not exist before 2007. A421. Reese also did not send a license solicitation to TracFone because Reese was not aware of TracFone until 2013. *Id.*

On August 31, 2005, Reese filed suit against eight cellular wireless mobile telephone handset manufacturers in the Eastern District of Texas in the case styled *Reese v. Samsung Telecommunications America, L.P., et. al.*, Case No. 2:05-cv-00415 ("the Samsung case"). In the Samsung case, Reese alleged infringement of U.S. Patent No. 6,427,009 ("the '009 patent") against eight manufacturers of mobile handsets. A3001-36. That suit continued through January 31, 2007. A422. Five months later, in May 2007, Reese filed suit against Texas land-line telephone service providers Southwestern Bell Telephone Company and GTE Southwest, Inc., along with their parent companies AT&T, Inc., and Verizon Communications, Inc. ("the Southwestern Bell litigation"). A3037-45. Reese asserted the '150 patent in the Southwestern Bell litigation, which was ultimately disposed of in 2009 following an appeal to this Court. *Id.;* A422. During the Southwestern Bell litigation, the defendants deposed third-party, Nortel Networks, Inc., related to Nortel's knowledge of the development of Call Waiting Caller ID. A422. Nortel designated employees Steve Wiercioch, Dana Merrill and William Pezullo to testify on its behalf. *Id.*. Those witnesses were deposed in the Southwestern Bell litigation by attorneys Kevin Anderson and Michael Songer, both of whom

represent Appellee parties in the present case. *Id*. The Nortel witnesses were questioned regarding Nortel's landline Call Waiting Caller ID product and the development of the combined service at Bellcore. A422-23. The documents produced by Nortel in the Texas litigation, as well as the transcripts of the Nortel deposition remain available, especially to Appellee's counsel. *Id*.

During the pendency of both the Samsung litigation and the Southwestern Bell litigation, Reese's ability to participate in the litigations was significantly limited as a result of his failing health. A423. Reese was unable to travel from 2000 to 2008 and was unable to effectively participate in the litigations for significant amounts of time. *Id*. Mr. Reese underwent a kidney transplant in 2008 that allowed him to recover from kidney failure. *Id.*

After the conclusion of both the Samsung litigation and the Southwestern Bell litigation, Reese filed a separate suit against land-line telephone service providers AT&T California and Verizon California in the Central District of California—Western Division alleging infringement of the '150 patent. A3084-3109. That litigation lasted from March 2011 to December 21, 2012 and included an appeal to this Court. A423.

Five months after the conclusion of the California litigation, on May 29, 2013, Reese filed suit against Sprint—along with Verizon Wireless Servs. LLC, TracFone Wireless, Inc., AT&T Mobility II, LLC, and T-Mobile USA, Inc. A009-

038. The District Court severed those cases into five separate cases, with the Sprint case functioning as the lead case. A039-042. Each of the five Defendants filed a motion for summary judgment on the affirmative defense of laches. A304-384; A889-950; A1731-69; A2437-2735; and A2860-2897.  Reese opposed the motions for summary judgment because genuine issues of material fact exist regarding the laches defense and because Reese had not been afforded the opportunity to discover the start date of the Defendants' alleged infringement or any prejudice to the Defendants due to the alleged delay. A394-417. After briefing and oral argument, the District Court granted summary judgment in each of the five cases. A394-417; A1638-49; A2361-73; A2779-89; and A3199-3211. Reese timely filed a motion for reconsideration based upon the recent Supreme Court decision in *Petrella v. MGM*; however, upon reconsideration, the District Court declined to apply the *Petrella* jurisprudence to a laches defense to patent infringement. A679-725; A737-42; A801-13. Reese timely filed this appeal.

## SUMMARY OF THE ARGUMENT

The District Court erred by resolving several disputed issues of material fact in favor of the moving parties and against non-movant Reese. In determining whether any delay in asserting his rights was unreasonable, whether any relevant circumstances excused the alleged delay, and whether Appellees suffered prejudice as a result of the delay, the District Court was required to resolve any disputed issues of fact in favor of Reese. Instead, the District Court improperly resolved each of those fact questions against the non-movant patentee.

The District Court further erred by granting Appellees' Motions for Summary Judgment without allowing Reese the opportunity to take relevant discovery, requested and properly identified under Federal Rule of Civil Procedure 56(d).

The District Court clearly erred in granting Appellees' Motions for Summary Judgment of Laches when it held that there is no evidence that Appellees had notice of Reese's involvement in "other litigation". The Federal Circuit has held in the *SCA* case in 2014 (not 2015) that actual notice from a plaintiff is not necessary where the defendant would have "likely known of the "other litigation".

Reese agrees with the dissenting opinion in *SCA* 2015, and that it sets forth the correct analysis for laches after *Petrella*.

9

# ARGUMENT

## A.     Standard of Review

### *1.  Summary Judgment determinations are reviewed de novo.*

All district court decisions to grant summary judgment are reviewed *de novo*. *Wanlass v. Fedders Corp.*, 145 F.3d 1461, 1463 (Fed. Cir. 1998) (citing *Gasser Chair Co. v. Infanti Chair Mfg. Corp.,* 60 F.3d 770, 773 (Fed. Cir. 1995)). "Where the grant of summary judgment is based on laches, however, additional standards of review may also apply." *Id.* (citing *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.*, 960 F.2d 1020, 1039 (Fed. Cir. 1992) (*en banc*)). Generally, a determination of laches is reviewed for abuse of discretion, but where that determination is based upon "an erroneous interpretation of the law or on clearly erroneous factual underpinnings," this Court may set aside a discretionary decisions. *Id.*

### *2.  Discovery rulings are reviewed for an abuse of discretion.*

The proper standard to test Reese's contention that the District Court improperly limited his discovery, an issue not unique to patent law, is "whether or not the trial judge abused his discretion" applying the law of the regional circuit. *Diego, Inc. v. Audible, Inc.*, 505 F.3d 1362, 1370 (Fed. Cir. 2007). The District Court's denial of discovery "will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002)

(quoting *Goehring v. Brophy,* 94 F.3d 1294, 1305 (9th Cir.1996) and *Sablan v. Dep't of Fin.,* 856 F.2d 1317, 1321 (9th Cir.1988) (internal quotations omitted)).

**B.    The District Court reversibly erred in resolving material questions of fact against Reese.**

The District Court improperly resolved material questions of fact against the non-movant, Reese, when it granted the Appellees' motions for summary judgment.

To invoke the defense of laches[1], a defendant is required to prove: "1. the plaintiff delayed filing suit for an unreasonable and inexcusable length of time from the time the plaintiff knew or reasonably should have known of its claim against the defendant, and 2. the delay operated to the prejudice or injury of the defendant." *Wanlass*, 145 F.3d at 1463-64. A presumption of those critical factors can be applied where there is <u>proof</u> that the patentee delayed filing suit for more than six years after <u>actual or constructive knowledge</u> of the defendant's allegedly infringing activity." *Id.* (citing *Aukerman*, 960 F.2d at 1035-36) (emphasis added). In the present case, as in the *Wanlass* case, the District Court improperly determined issues of material fact in applying the presumption of laches, deciding against the non-movant the question of whether the plaintiff knew or should have known about the defendants' infringing activity. In the instant case, the District Court relied on Reese's licensing campaign to some of the defendants (Sprint,

.

Verizon, and T-Mobile) to improperly apply the presumption of laches in favor of all five Defendants-Appellees (including AT&T Mobility, who did not even exist at the time of the campaign and TracFone, who did not even receive a letter from Reese). There was no evidence in the licensing letters that would prove that Reese knew or should have known of the Defendants' infringing activity or even that the Defendants' infringing activity had begun at the time Reese offered the licenses in question. In fact, Reese requested relevant discovery from the Defendants related to the prejudice or injury alleged in Defendants' Motions for Summary Judgment and for the purpose of discovering whether Defendants were actually offering the accused Call Waiting ID service at the time of his licensing letters and at the time the presumptive laches period would have begun. As addressed below, the District Court improperly <u>denied</u> Reese's request (without even considering or acknowledging Reese's Opposition to Defendants' Motions for Summary Judgment (MSJ) on laches), preventing him from providing any evidence related to the prejudice alleged in  Defendants' MSJ  and the timing of Defendants' first use or offer of the infringing Call Waiting ID service.

The District Court also improperly resolved material issues of disputed facts with respect to Reese's evidence to rebut the presumption of laches.  "Once the presumption [of laches] is established, the patentee may introduce evidence

sufficient to support a finding of the nonexistence of the presumed facts." *Wanlass*, 145 F.3d at 1464 (citing *Aukerman*, 960 F.2d at 1037).

Reese submitted evidence that his alleged delay in filing suit was not unreasonable or inexcusable and that Appellees did not suffer any injury or prejudice—economic or evidentiary—as a result of the alleged delay. Evidentiary prejudice may arise where a defendant is no longer able to present a full and fair defense due to loss of records or witnesses, while on the other hand, economic prejudice may arise where the defendant will suffer damages that could have been prevented by an earlier suit (rather than merely the accumulation of damages attributable to a finding of infringement). *Aukerman*, 960 F.2d at 1032. Economic prejudice is most applicable where an infringer could have switched to a non-infringing product if given notice. *Id.* (citing *Rome Grader & Mach. V. J.D. Adams Mfg. Co.*, 135 F.2d 617, 619 (7th Cir. 1943)).

Reese was only required to overcome the presumption of laches by providing a "minimum quantum of evidence ... nothing more." *Aukerman*, 960 F.2d at 1037. The presumption of laches should have been eliminated by the evidence Reese showed the trial court showing both an excuse for his alleged delay and a lack of evidentiary prejudice. *Id.*

Reese provided uncontroverted evidence showing an excuse for his alleged delay, which included "other litigation" and his failing health. A423.

Appellees claimed in their summary judgment motions to be subject to evidentiary prejudice because discovery documents were no longer available due to the length of time Reese failed to bring suit; however Reese provided the District Court with evidence to the contrary, showing that the "missing" evidence was available from other sources, including parties to the litigation. A410-412. Certain counsel for Appellees were present at depositions taken prior in prior litigations involving Reese and have access to licensing documents involving Reese and previous defendants. A403-04; A422-23. No Appellee was able to state why those copies of discovery documents were insufficient.

Although "material prejudice to adverse parties resulting from the plaintiff's alleged delay is <u>essential</u> to the laches defense," the District Court does not appear to have considered Reese's evidence. *See Aukermann*, 960 F.2d at 1032 (emphasis added). If it did consider Reese's rebuttal evidence, the District Court improperly resolved that evidence, which presented genuine issues of material fact, against the non-movant, Reese. *See* Fed. R. Civ. P. 56; *See e.g., Petrella v. Metro-Goldwyn-Mayer, Inc.,* 695 F.3d 946, 951 (9th Cir. 2012) (*cert. granted,* 134 S.Ct. 50 (2013)) ("Whether a plaintiff's conduct constitutes laches in any given circumstance is an issue of fact"). It was improper for the District Court to grant summary judgment on the Defendants' laches defense because doing so required the District Court to resolve several layers of material facts and draw inferences against the non-

movant, Reese. The Ninth Circuit has previously found that "because a claim of laches depend on a close evaluation of all the particular facts in a case, it is seldom susceptible of resolution by summary judgment." *King v. Hallmark Cards, Inc.,* 225 F.3d 1030, 1041 (9th Cir. 2000). The District Court's order on summary judgment is starkly contrary to Federal Rule of Civil Procedure 56(a) and (c) and must be reversed.

## C. The District Court abused its discretion in denying Reese's request for discovery under Federal Rule of Civil Procedure 56(d).

The Federal Rules of Civil Procedure specifically address Reese's request for discovery to rebut Defendants' laches defense. Rule 56(d) allows a non-movant to show by affidavit or declaration that "it cannot present facts essential to justify its opposition," and allows the District Court to defer or deny the motion or allow the non-movant sufficient time to obtain the identified discovery. In the present case, the District Court refused to allow Reese the opportunity to take relevant discovery to rebut the Defendants' positions that (1) the presumption of laches should apply because Reese should have known of Defendants' infringing activity at the time the laches period began to run, and (2) that the Defendants were prejudiced by Reese's delay in filing suit. The District Court's denial of discovery clearly caused actual and substantial prejudice to Reese and if was case dispositive.

While on the one hand courts are vested with broad discretion to permit or deny discovery, on the other hand, Rule 26(b)(1) of the Federal Rules of Civil

15

Procedure allows discovery of any matter that reasonably can be expected to lead
to admissible evidence. "Prejudice is established if there is a reasonable probability
that the outcome would have been different had discovery been allowed." *Laub v.
U.S. Dep't of Interior*, 342 F.3d 1080, 1093 (9th Cir. 2003) (citing *Martel v.
County of Los Angeles,* 56 F.3d 993, 995 (9th Cir. 1995) (*en banc*)). Here, the
relevant discovery requested by Reese was well within the appropriate scope of
discovery under Rule 26(b)(1) and had a reasonable probability of changing the
outcome on the Defendants' laches defense. There is a reasonable probability that
the discovery Reese requested would show the Defendants were <u>not</u> using the
accused Call Waiting ID service at the time he sent licensing letters and that the
Defendants in no way changed their position or were otherwise prejudiced based
upon Reese's alleged delay. The District Court abused its discretion in granting
summary judgment before Reese was allowed any opportunity to take relevant
discovery on the requested topics. As such, the District Court's order on summary
judgment must be overturned to allow Reese the opportunity to obtain discovery
on Defendants' first use or offer of the accused Caller Waiting ID service and the
lack of prejudice or injury to Defendants resulting from the alleged delay in filing
suit.

**D. The District Court clearly erred in granting Defendants' Motions for Summary Judgment of Laches when it held that there is no evidence that Defendants had notice of Reese's "other Litigation".**

Reese provided uncontroverted evidence showing an excuse for his alleged delay, which included "other litigation" and his failing health and corresponding inability to fully participate in the "other litigation" for significant periods of time. A423. The "other litigation" generally requires that a defendant be given notice of the "other litigation", however the Federal Circuit has held in the *SCA* case in 2014 that actual notice from a plaintiff is not necessary where the defendant would have "likely known" of the "other litigation". In *Hall v. Aqua Queen Mfg., Inc.,* 93 F.3d 1548, 1554, the Federal Circuit noted that delay occasioned by involvement in other enforcement litigation *may* be reasonable if the alleged infringer has knowledge of (1) the existence of "other litigation", and (2) the Plaintiff's intent to enforce its rights against the infringer at the conclusion of the "other litigation".

The District Court's summary judgment order (at page 2) makes reference to "other litigation" brought by Reese against *Southwestern Bell Telephone, et al.,* along with their parent companies *AT&T, Inc., and Verizon Communications, Inc.,* on December 23, 2008, and against *Verizon California and AT&T California* on December 21, 2012. Therefore, both Verizon and AT&T in the present case, and most likely Sprint, T-Mobile and TracFone in the present case, were aware of

17

Reese's "other litigation", even if Reese did not provide that knowledge. In such a circumstance, Reese lack of notice of "other litigation" is excused.

The fact is, Verizon and AT&T in the present case, as a result of their parent companies and related landline telephone companies involvement in Reese's "other litigation" that ended with a Federal Circuit mandate during March 2013, were most likely aware of Reese's "other litigation" and had every reason to believe that they would be sued, whether it was "next" or "soon". Verizon in the present case even acknowledges being aware of "seven prior litigations" that Reese brought against the telecommunications industry.

The Federal Circuit original three-judge panel in *SCA* discusses the law that "notice" to parties who may later be sued, once "other litigation" is completed, does not require the patent owner to give notice. If the accused infringer is otherwise aware of the "other litigation" and had a reasonable belief that they would be sued, then there is a good basis that the "other litigation" excuses Reese's alleged delay in bringing suit against AT&T, Verizon, Sprint, T-Mobile and TracFone in the present case.

## **CONCLUSION**

Reese has shown a litany of reasons requiring this Court to overturn the District Court's grant of summary judgment of laches in favor of Defendants-Appellees.

The District Court opinion is contrary to the Supreme Court's position on laches, annunciated in *Petrella v. Metro-Goldwyn-Mayer*.

The District Court committed reversible error by resolving genuine issues of disputed fact in favor of the movant when it determined that the *Aukerman* presumption of laches should apply against Reese and when it determined that Reese could not rebut that presumption.

The District Court abused its discretion in denying Reese any opportunity to take relevant discovery on Defendants' laches defense. Reese suffered actual and substantial prejudice because he was not allowed to discover whether Defendants were using or offering the infringing Call Waiting ID service at the time they asserted the laches period should begin, whether Defendants suffered any prejudice or injury due to the alleged delay in filing suit, and whether Defendants were aware of Reese's "other litigation".

For at least these reasons, the District Court's order must be reversed and this case remanded to allow Reese to proceed to trial on the merits of his

infringement claim and to obtain discovery fairly allowed by the Federal Rules of Civil Procedure.

For the foregoing reasons, Mr. Reese respectfully requests that this Court reverse each of the District Court's summary judgment orders of May 9, 2014 and remand the case for further proceedings.

Respectfully submitted,

November 23, 2015

*/s/ Andrew J. Dhuey*
Counsel for Plaintiff-Appellant
Morris Reese

# ADDENDUM

1. Order Granting Sprint Nextel Corp.'s Motion for Summary Judgment on Laches

2. Order Granting TracFone Wireless, Inc.'s Motion for Summary Judgment on Laches

3. Order Granting Verizon Wireless Servs. LLC's Motion for Summary Judgment on Laches

4. Order Granting AT&T Mobility II LLC's Motion for Summary Judgment on Laches

5. Order Granting T-Mobile USA, Inc.'s Motion for Summary Judgment on Laches

6. Order Denying Reese's Request for Reconsideration

7. Final Judgment in Favor of Appellees

8. U.S. Patent No. 6,868,150.

**O**

# United States District Court
# Central District of California

| | |
|---|---|
| MORRIS REESE,<br>               Plaintiff,<br>    v.<br><br>SPRINT NEXTEL CORPORATION,<br>               Defendant. | Case No. 2:13-cv-03811-ODW(PLAx)<br><br>**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [53]** |

## I.     INTRODUCTION

Plaintiff Morris Reese notified virtually the entire cellular wireless industry of U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that providing call-waiting and caller-ID services infringed the '150 Patent.  But it was not until May 2013—more than eight years later—that Reese filed patent-infringement suits against the five cellular service providers.  Finding this delay unfair, the service providers, including Defendant Sprint Nextel Corporation, all individually filed motions for summary judgment against Reese based on the defense of laches.  Faced with dismissal of his current suits because of his prolonged delay, Reese now offers excuses—such as his illness and involvement in other litigation—to justify his delay in bringing suit.  Because none of Reese's explanations excuse his delay, the Court **GRANTS** Sprint's Motion for Summary Judgment.  (ECF No. 53.)

## II.   FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005.  (SUF ¶ 2; Ex. A.)  The '150 Patent is a continuation of the '009 Patent which issued July 30, 2002.  (Mot. Ex. C.)  The '150 Patent expired in 2011, two years prior to Reese's suit against Sprint. (SUF ¶ 5.)

On April 13, 2005, Reese sent a letter to the CEOs of Sprint Corporation and Nextel Communications, Inc. asserting that they infringed the '150 Patent with their call-waiting ID service.   (SUF ¶ 1; Mot. Exs. A, B.)   The April 13, 2005 letter informed Sprint of the '150 Patent, and directed Sprint in particular to claims 25 and 36—which Reese indicated were "applicable to [Sprint] customers subscribed to 'Call Waiting ID' service.'"  (*Id.*)  Reese asserted that for Sprint to continue to provide that service to its customers, Sprint required a license from Reese.  (*Id.*)  Reese did not inform Sprint that it would be sued if it did not take a license.  (*Id.*)

Sprint was one of twelve different telecommunications companies who received infringement notices from Reese in 2005—BellSouth, Cingular Wireless, Motorola, Nextel, Nokia, Qwest Communications, Samsung, SBC Communications, Verizon, and T-Mobile also received letters.  (Reese Decl. ¶¶ 3–5, 8–10, 14.)  Between 2005 and 2013, Reese litigated several other patent-infringement lawsuits across the country.[1]  (*Id.* ¶ 17–18.)  Four of these suits involved the '150 Patent or its immediate parent patent.  (*Id.* ¶¶ 12–13.)  Reese was represented by counsel for all of these suits, with the exception of *Reese v. Verizon Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se.  (Reese Decl. ¶ 33.)

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv- 80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

From 2000 to 2008, Reese experienced serious heath problems.  Reese began dialysis treatments for renal failure in 2000.  (*Id.* ¶ 29.)  Reese's dialysis treatments were performed three times per week until Reese had a kidney transplant in 2008.  (*Id.* ¶¶ 30–32.)

On May 29, 2013, Reese filed suit against Sprint—along with Verizon., TracFone Wireless, Inc., United States Cellular Corporation, AT&T Mobility LLC, and T-Mobile USA, Inc.  (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.)  The Court severed the case on July 15, 2013.  (*Id.* ECF No. 18.)

### III.    LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial.  *Id.*; Fed. R. Civ. P. 56(c).  Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative.  *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000).  A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968).  An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party.  *Id.*  Where the moving and nonmoving parties' versions of events differ, courts / / /

are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV.    DISCUSSION

In the interest of fairness, those who are granted a monopoly under the patent system have an obligation to enforce their rights in a timely manner. A defendant in a patent-infringement suit may raise the equitable defense of laches when the plaintiff is dilatory bringing suit and that delay prejudices the defendant. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992). In patent cases, laches bars recovery of damages for any infringement that occurs prior to the filing of suit. *Id.* at 1040. A laches defense is a matter within the trial court's discretion based on consideration of all of the facts in a particular case. *Id.* at 1040–41.

To prevail on a laches defense, a defendant must prove by a preponderance of the evidence that: (1) the plaintiff knew or should have known of the infringement and with that knowledge delayed filing suit for an unreasonable and inexcusable length of time, and (2) the defendant was materially prejudiced by the delay. *Id.* at 1032; *see also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010). Where the delay in filing the suit exceeds six years, the court will presume the delay was unreasonable and prejudicial to the defendant. 35 U.S.C. § 286; *Hearing*, 600 F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.) The burden is then on the plaintiff to prove the existence and reasonableness of an excuse for the delay, and to show a lack of prejudice to the infringer. *Hearing*, 600 F.3d at 1375.

Determining the length of the delay involves two sub-issues: when the delay period begins to run and when the delay period ends. The delay period begins to run from the time that the plaintiff had actual or constructive knowledge of the alleged infringing activities. *Aukerman*, 960 F.2d at 1032; *Hearing Components*, 600 F.3d at 1375. But the plaintiff need not be certain that the conduct is infringing; time starts to run when the patentee is aware of sufficient facts to form a reasonable belief that some

/ / /

infringing conduct exists. *Aukerman,* 960 F.2d at 1032.  The delay period ends no later than the date of the filing of suit. (*Id.*)

The reasonableness of the delay is not determined by application of mechanical rules. *Aukerman*, 960 F.2d at 1032.  Rather, the reasonableness of the delay depends on the particular facts and circumstances of the individual case. *Id.* The court must consider and weigh any justification offered by the plaintiff for its delay. *Id.* at 1033.

Prejudice to the defendant may be either economic or evidentiary. *Id.* Economic prejudice arises when a defendant incurs damages that would likely have been prevented by earlier suit. *See id.* Economic prejudice is not merely damages attributable to patent infringement liability. *Id.* at 1033.  Evidentiary or "defense" prejudice arises when the defendant can no longer present a full and fair defense on the merits due to the plaintiff's delay. *Id.* at 1032.  This inability may be occasioned by "the loss of records, the death of a witness, [or] the unreliability of memories of long past events." *Id.*

Sprint asserts that it is entitled to a laches presumption because of Reese's eight -year delay in filing suit.  Reese contends that Sprint is not entitled to a laches presumption because there is no evidence that the delay period, for laches purposes, began to run in 2005.  In the alternative, Reese argues that he can rebut the laches presumption because his delay was reasonable and resulted in no prejudice to Sprint. The Court considers each in turn.

## A. Laches Presumption

Sprint asserts that it is entitled to a presumption that Reese's delay in filing suit was unreasonable and prejudicial to Sprint.  In support of this assertion, Sprint argues that Reese knew or should have known of Sprint's alleged infringement as of April 13, 2005, when Reese sent the infringement-allegation letter to Sprint.  Reese then failed to formally assert his infringement claims against Sprint until 2013.  Sprint asserts that because this amounts to a more than eight-year delay, it is entitled to the laches presumption under § 286.

A000639

Reese argues that the delay period did not begin to run on April 13, 2005 because his letter to Sprint was not an infringement allegation, but merely an invitation for Sprint to open licensing discussions with Reese. Thus, Reese contends, there is no evidence that Reese actually knew of Sprint infringement in 2005. This argument is contrary to the plain text of the letter. Reese states in his letter to Sprint that in order for it to continue to provide call-waiting-ID services, Sprint "requires a license from Mr. Reese." (Mot. Ex. D.) It strains credibility to argue that a patent owner who demands that a company take a license can somehow not know of his infringement claim on that patent.

Moreover, Federal Circuit precedent establishes that knowledge as to whether the device *actually* infringes is not required to establish laches. A good-faith belief is sufficient. *Aukerman,* 960 F.2d at 1032. Reese clearly believed that Sprint's call-waiting-ID services infringed the '150 Patent—evidenced by his attempt to open licensing negotiations in 2005. Accordingly, the Court finds that Reese had actual knowledge of Sprint's infringement at least on April 13, 2005. Because Reese failed to formally assert his rights until 2013, Sprint is entitled to a presumption of laches. Thus, Reese "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." *Id.* at 1038.

**B. Reasonableness of the delay**

Reese argues that even if he had knowledge of Sprint's infringement in 2005, his eight-year delay in filing suit was reasonable. Reese proffers two justifications for his delay: his involvement in other litigation and his worsening medical condition. Reese also claims he is entitled to leniency because he was representing himself for some of the litigation. The Court addresses each in turn.

First, Reese argues that his eight-year delay in filing suit against Sprint was reasonable because he was extensively involved in other litigation. On August 31,

2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony, Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate patent of the '150 Patent). (Reese Decl. ¶ 17.) That suit continued through January 31, 2007. (*Id.* ¶ 18.) Four months later, Reese sued land-line telephone service providers Southwestern Bell Telephone Company, GTE Southwest, and their parent companies AT&T and Verizon, for infringement of the '150 Patent. (*Id.* ¶ 21.) Reese voluntarily dismissed AT&T and Verizon from that action, but later brought a separate suit against the same companies that lasted from March 2011 to December 21, 2012. (*Id.* ¶¶ 24, 33.) Approximately five months later, Reese filed this action against the Sprint, again alleging infringement of the '150 Patent.

Involvement in other enforcement litigation may, in some circumstances, excuse a plaintiff's delay in suing an alleged infringer. But the Federal Circuit has held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying others—absent other factors—is a strategic decision that does not excuse or otherwise toll the presumption period for laches. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other enforcement litigation *may* be reasonable if the alleged infringer has knowledge of (1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its rights against the infringer at the conclusion of the other litigation. Although there is no rigid requirement that such notice be given, "[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice." *Hall*, 93 F.3d at 1554 (internal quotations omitted); *accord Aukerman*, 960 F.2d at 1039.

Here, Sprint received no communications from Reese for eight years after receipt of the 2005 infringement-allegation letters. There is no evidence that Sprint had any notice—from Reese or otherwise—that Reese intended to sue it after the close of his other litigation. Reese's eight-year silence made it reasonable for Sprint

to believe that Reese had declined to assert his rights against Sprint.  Where there is prior contact between the plaintiff and the accused infringer—especially when the contact is in the form of an infringement accusation—notice becomes essential to a finding of excusable delay.  A clear indication that the plaintiff intends to enforce its rights against the alleged infringer after the conclusion of the other litigation allows the accused infringer an opportunity to take steps to protect itself from liability.  *Accord Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911 (E.D. Va. 1996).  Here, Sprint had no such opportunity.

The equivocal nature of Reese's contact with Sprint failed to give adequate notice that it may be subject to suit in the future.  The equities dictate that notice of intent to pursue infringement claims against Sprint at the conclusion of Reese's other litigation was required in this case.  Accordingly, Reese's choice to strategically pursue other lawsuits while ignoring Sprint is legally insufficient to overcome the presumption of unreasonable delay.

Second, Reese argues that his delay in bringing suit was reasonable because of the serious health problems he experienced from 2000 to 2008.  He argues that his ability to sue Sprint was significantly restricted because of his frequent dialysis treatments and eventual kidney transplant.

Generally, illness is not recognized as an adequate excuse for a plaintiff's delay in bringing suit.  And although Reese certainly was afflicted with a debilitating illness, Reese's assertion that his delay was necessary because of his failing health is directly contradicted by his previous excuse—his extensive involvement in other litigation.  Notwithstanding his poor health, Reese was able to file multiple suits against other infringers during his illness and litigate them to conclusion.  (Reese Decl. ¶¶ 17–33.)  The fact that Reese was able to competently litigate several other lawsuits undermines his contention that he was physically unable to pursue lawsuits against Sprint.

/ / /

/ / /

Moreover, Reese ignores the five years that have passed since his kidney transplant. Even after his health issues ended in 2008, Reese did and said nothing until he filed suit in 2013. Reese does not assert that his health issues continued after 2008. Thus, at a minimum Reese had three years after the resolution of his health issues before laches would be presumed.

Finally, an inability to find willing counsel, another of Reese's excuses, is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit. *Hall*, 93 F.3d at 1554. Additionally, Reese's litigation history shows that he has used multiple counsel at various times, and was fully capable of engaging in different litigation activities with different counsel—or by himself.

### C. Prejudice

A plaintiff can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the defendant. *Aukerman*, 960 F.2d 1030. Reese contends that his delay did not materially prejudice Sprint. But Reese attempts to prove this lack of prejudice by asserting that *Sprint* has failed to demonstrate that it has been prejudiced by Reese's delay—thus placing the burden of production on Sprint. This is incorrect; the *Auckerman* presumption places the burden of production on the plaintiff. *Hall*, 93 F.3d at 1553. Thus it is Reese's burden to come forward with affirmative evidence of a lack of prejudice. Sprint may remain "utterly mute on the issue of prejudice and nonetheless prevail[]." *Hall*, 93 F.3d at 1554.

Reese has provided no affirmative evidence that Sprint will not suffer prejudice from his eight-year delay. Reese merely attacks Sprint's assertions of prejudice as "largely conclusory and lack[ing] any proof." (Opp'n 15.) This is insufficient—the burden lies with Reese, not Sprint. Accordingly, Reese has failed to adduce any affirmative evidence that Sprint has not suffered evidentiary and economic prejudice by Reese's eight-year delay in filing suit.

/ / /

/ / /

# V.    CONCLUSION

Based on the undisputed facts, Sprint is entitled to the presumption of laches. Reese has failed to prove that his delay was reasonable, or that Sprint suffered no prejudice as a result of the delay.    Accordingly, for the reasons discussed above, Sprint's Motion for Summary Judgment is **GRANTED**.    (ECF No. 53.)  A Judgment will issue.  The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to resolve.

**IT IS SO ORDERED.**

May 9, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

**O**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# United States District Court
# Central District of California

MORRIS REESE,

               Plaintiff,

     v.

TRACFONE WIRELESS, INC.,

               Defendant.

Case No. 2:13-cv-05196-ODW(PLAx)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [30]**

## I.  INTRODUCTION

Plaintiff Morris Reese notified virtually the entire cellular wireless industry of U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that providing call-waiting and caller-ID services infringed the '150 Patent.  But it was not until May 2013—more than eight years later—that Reese filed patent-infringement suits against the five cellular wireless providers.  Finding this delay unfair, the wireless providers, including Defendant TracFone Wireless, Inc., all individually filed motions for summary judgment against Reese based on the defense of laches.  Faced with dismissal of his current suits because of his prolonged delay, Reese now offers excuses—such as his illness and involvement in other litigation—to justify his delay in bringing suit.  Because none of Reese's explanations excuse his delay, the Court **GRANTS** TracFone's Motion for Summary Judgment.  (ECF No. 30.)

## II.    FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005.  (SUF ¶¶ 1–2; Ex. 1.)  The '150 Patent relates to the combination of Caller ID and Call Waiting.  ()  The '150 Patent is a continuation of the '009 Patent which issued July 30, 2002.  The '150 Patent expired in 2011, two years prior to Reese's suit against TracFone. (*Id.* ¶ 3.)

TracFone sells prepaid wireless cellular devices throughout the United States.  (*Id.*¶ 5.)  TracFone is a Mobile Virtual Network Operator ("MNVO") that does not own or operate any wireless communication networks.  (*Id.*¶ 4.)  Rather, TracFone utilizes the wireless communication networks provided by network operators— including AT&T Mobility II LLC, Verizon Wireless Services, LLC, and T-Mobile USA, Inc. (*Id.* ¶ 5.)  TracFone is a customer and indemnitee of the network operators.  (*Id.* ¶¶ 4, 22.)

TracFone sells prepaid wireless cellular devices at prominent national retailers—including Wal-Mart, CVS, Walgreens and Dollar General. (*Id.*  ¶ 7.)  TracFone has been operating under the TracFone brand since 1996.  (*Id.* ¶ 6.)  In 2005, TracFone had over 6 million customers.  (*Id.* ¶ 7.)  By 2007 TracFone was the sixth-largest wireless provider in the Country with approximately 9.5 million customers.  (*Id.* ¶¶ 9–10.)  TracFone's prepaid wireless cellular devices have included call-waiting and caller-ID features since 2001.  (*Id.* ¶ 14.)  TracFone has continuously advertised and marketed those features. (*Id.*)

Between April and June of 2005, Reese sent infringement-allegation letters to at least twelve different telecommunications companies—BellSouth, Cingular Wireless, Motorola, Nextel, Nokia, Qwest Communications, Samsung, SBC Communications, Sprint, T-Mobile, Verizon Communications, and Verizon Wireless.  (*Id.*  ¶ 15.)  TracFone did not receive an infringement-allegation letter from Reese.  (*Id.*)  Reese asserts that he was not aware of TracFone at the time he sent the infringement-allegation letters.  (Reese Decl. ¶ 13.)

Between 2005 and 2013, Reese litigated several other patent-infringement lawsuits across the country.[1]  (SUF ¶ 16.)  Four of these suits involved the '150 Patent or its immediate parent.  (*Id.* ¶ 17.)  Reese was represented by counsel for all of these suits, with the exception of *Reese v. Verizon Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se.  (Reese Decl. ¶ 33.)

From 2000 to 2008, Reese experienced serious heath problems.  Reese began dialysis treatments for renal failure in 2000.  (*Id.* ¶ 29.)  Reese's dialysis treatments were performed three times per week until Reese had a kidney transplant in 2008.  (*Id.* ¶¶ 30–32.)

On May 29, 2013, Reese filed suit against TracFone—along with the cellular wireless providers who operate the networks: Verizon Wireless, Sprint Nextel Corporation, United States Cellular Corporation, AT&T Mobility LLC, and T-Mobile USA, Inc.  (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.)  The Court severed the case on July 15, 2013.  (*Id.* ECF No. 18.)  Reese refiled a separate complaint against TracFone on July 18, 2013.  (ECF No. 1.)

## III.   LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv-80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

In the interest of fairness, those who are granted a monopoly under the patent system have an obligation to enforce their rights in a timely manner. A defendant in a patent-infringement suit may raise the equitable defense of laches when the plaintiff is dilatory bringing suit and that delay prejudices the defendant. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992). In patent cases, laches bars recovery of damages for any infringement that occurs prior to the filing of suit. *Id.* at 1040. A laches defense is a matter within the trial court's discretion based on consideration of all of the facts in a particular case. *Id.* at 1040–41.

To prevail on a laches defense, a defendant must prove by a preponderance of the evidence that: (1) the plaintiff knew or should have known of the infringement and with that knowledge delayed filing suit for an unreasonable and inexcusable length of time, and (2) the defendant was materially prejudiced by the delay. *Id.* at 1032; *see also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010).

1    Where the delay in filing the suit exceeds six years, the court will presume the delay

2    was unreasonable and prejudicial to the defendant.  35 U.S.C. § 286; *Hearing*, 600

3    F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.)  The burden is then on the

4    plaintiff to prove the existence and reasonableness of an excuse for the delay, and to

5    show a lack of prejudice to the infringer.  *Hearing*, 600 F.3d at 1375.

6         Determining the length of the delay involves two sub-issues: when the delay

7    period begins to run and when the delay period ends.  The delay period begins to run

8    from the time that the plaintiff had actual or constructive knowledge of the alleged

9    infringing activities.  *Aukerman*, 960 F.2d at 1032;  *Hearing Components*, 600 F.3d at

10   1375.  But the plaintiff need not be certain that the conduct is infringing; time starts to

11   run when the patentee is aware of sufficient facts to form a reasonable belief that some

12   infringing conduct exists.  *Aukerman,* 960 F.2d at 1032.  The delay period ends no

13   later than the date of the filing of suit.  (*Id.*)

14        The reasonableness of the delay is not determined by application of mechanical

15   rules.  *Aukerman*, 960 F.2d at 1032.  Rather, the reasonableness of the delay depends

16   on the particular facts and circumstances of the individual case.  *Id.*  The court must

17   consider and weigh any justification offered by the plaintiff for its delay.  *Id.* at 1033.

18        Prejudice to the defendant may be either economic or evidentiary.   *Id.*

19   Economic prejudice arises when a defendant incurs damages that would likely have

20   been prevented by earlier suit.  *See id.*  Economic prejudice is not merely damages

21   attributable to patent infringement liability.  *Id.* at 1033.  Evidentiary or "defense"

22   prejudice arises when the defendant can no longer present a full and fair defense on

23   the merits due to the plaintiff's delay.  *Id.* at 1032.  This inability may be occasioned

24   by "the loss of records, the death of a witness, [or] the unreliability of memories of

25   long past events." *Id.*

26        TracFone asserts that it is entitled to a laches presumption because Reese

27   delayed filing his patent-infringement suit for over six years after constructive

28   knowledge of TracFone's alleged infringement.  In the alternative, TracFone asserts

that it can claim the benefit of the other Defendants' laches presumption as a customer and indemnitee of the network providers. Reese argues that TracFone is not entitled to a laches presumption because he was not aware of TracFone at the time he sent the letters to the other wireless-provider defendants. In the alternative, Reese argues that he can rebut the laches presumption because his delay was reasonable and resulted in no prejudice to TracFone. The Court considers each in turn.

## A. Laches Presumption

TracFone argues that Reese had constructive knowledge of TracFone's allegedly infringing products in 2005—or at the very least 2007. TracFone asserts that regardless of which date the Court accepts, Reese's failure to file suit until 2013 entitles TracFone to a presumption of laches under § 286. Reese contends that because he was not aware of TracFone at the time he sent the letters to the other wireless-carrier Defendants the Court should not impose on him constructive knowledge of TracFone's infringement.

The equitable nature of laches does not demand actual knowledge of infringement to trigger. *See Aukerman*, 960 F.2d at 1032. The delay period begins at "the time the patentee knew, or in the exercise of reasonable diligence should have known, of the allegedly infringing activity." *Id.* Thus, in some circumstances courts impose an affirmative duty on patent owners to police their rights, and will impose constructive knowledge based on the required reasonable, diligent inquiry.

Imposition of constructive knowledge of infringement is appropriate in circumstances where there are "pervasive, open, and notorious activities" that a reasonable patentee would suspect were infringing. *Wanlass v. General Elec. Co.*, 148 F.3d 1334, 1338 (Fed. Cir. 1998). Significant "sales, marketing, publication, or public use of a product similar to or embodying technology similar to the patented invention . . . gives rise to a duty to investigate whether there is infringement. *Id.*; *Hall*, 93 F.3d at 1553. A duty to investigate may also be imputed when "[the patentee] has no actual knowledge of the sales, marketing, publication, public use, or other conspicuous

activities of potential infringement if these activities are sufficiently prevalent in the inventor's field of endeavor." *Id.*

Based on the undisputed facts, Reese was, at the latest, on constructive notice of TracFone's infringing activity as of 2007, when TracFone became the sixth-largest wireless provider as measured by customer base. (SUF ¶ 10.) Even if Reese had no actual knowledge of TracFone's sales and marketing—which is doubtful considering TracFone's well-established nationwide business—he may still be charged with constructive knowledge of TracFone's potential infringement based on its prevalence in the field.

In 2007, TracFone's marketed and sold its wireless cellular devices to over 6 million customers. (*Id.* ¶ 10.) Its activities were open, pervasive, notorious, and fit squarely within Reese's field of endeavor—telecommunications. It is undisputed that TracFone's wireless cellular devices utilized caller-ID and call-waiting technology since at least 2001. (*Id.* ¶¶ 6, 14.) It is also undisputed that TracFone's wireless cellular devices were sold by well-known nationwide retailers such as Wal-Mart, CVS, and Dollar General. (*Id.* ¶ 7.) Despite TracFone's commercial success,[2] Reese never undertook any investigation of TracFone and its infringing activities. Reese ignored TracFone when he sent the 2005 infringement-allegation letters to the wireless-carrier defendants—despite the fact that TracFone is a competitor of those defendants in a field with few competitors. A reasonable patentee, under the circumstances, would have at the very least investigated TracFone—and Reese's active enforcement history demonstrates that Reese is a more-than-capable litigant, shrewd at enforcing his patent rights.

Of course Reese did not have a duty to police the entire wireless-telecommunications industry by testing any and all questionable products. But the

---

[2] TracFone's success has continued. Its customer base has increased over time, swelling to 8 million in 2006, 9.5 million in 2007, 11 million in 2008, 14 million in 2009, and over 17.5 million in 2010. (SUF ¶¶ 9–13.)

A003205

law imposes a duty to investigate a particular product if and when publicly available information about it should have led him to suspect that product of infringing. *Accord Wanlass*, 148 F.3d at 1338; *Hall*, 93 F.3d at 1553 (finding constructive knowledge where the defendant sold and marketed allegedly infringing products through print advertisements and trade shows) *Avocet Sports Tech. Inc v. Polar Electro Inc*, No. C-12-02234 EDL, 2013 WL 1729668 at *4–5 (N.D. Cal. Apr. 16, 2013); *I/P Engine, Inc. v. AOL Inc.*, No. 2:11cv512, 2012 WL 5880265, at *2–6 (E.D. Va. Nov. 20, 2012); *Crown Packaging Tech., Inc. v. Rexam Beverage Can Co.*, No. 05–608 (MPT), 2010 WL 170249, at *4–7 (D. Del. Jan. 15, 2010).

Accordingly, after considering the totality of undisputed evidence presented, the Court finds it appropriate to impose on Reese constructive notice of TracFone's infringing products as of 2007. Reese did not file his infringement suit against TracFone until 2013, which amounts to a six-year delay. Thus, under § 286, TracFone is entitled to the laches presumption.[3] Consequently, the burden is on Reese to "come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." *Id.* at 1038.

**B. Reasonableness of the delay**

Reese argues that even if he can be charged with knowledge of TracFone's infringement in 2005, his delay in filing suit was reasonable. Reese proffers two justifications for his delay: his involvement in other litigation and his worsening medical condition. Reese also claims he is entitled to leniency because he was representing himself for some of the litigation. The Court addresses each in turn.

First, Reese argues that his six-year delay in filing suit against TracFone was reasonable because he was extensively involved in other litigation. On August 31,

---

[3] Because the Court finds that TracFone is entitled to the laches presumption based on Reese's constructive knowledge of TracFone's alleged infringement, it need not determine whether TracFone, as a customer and indemnitee of the network-provider defendants, can claim the benefit of their laches presumption.

2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony, Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate patent of the '150 Patent). (Reese Decl. ¶ 17.) That suit continued through January 31, 2007. (*Id.* ¶ 18.) Four months later, Reese sued land-line telephone service providers Southwestern Bell Telephone Company, GTE Southwest, and their parent companies AT&T and Verizon, for infringement of the '150 Patent. (*Id.* ¶ 21.) Reese voluntarily dismissed AT&T and Verizon from that action, but later brought a separate suit against the same companies that lasted from March 2011 to December 21, 2012. (*Id.* ¶¶ 24, 33.) Approximately five months later, Reese filed this action against TracFone, again alleging infringement of the '150 Patent.

Involvement in other enforcement litigation may, in some circumstances, excuse a plaintiff's delay in suing an alleged infringer. But the Federal Circuit has held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying others—absent other factors—is a strategic decision that does not excuse or otherwise toll the presumption period for laches. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other enforcement litigation *may* be reasonable if the alleged infringer has knowledge of (1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its rights against the infringer at the conclusion of the other litigation. *Hall*, 93 F.3d at 1554; *accord Aukerman*, 960 F.2d at 1039. Here, there is no evidence that TracFone knew of Reese's other litigation, nor of his intent to sue TracFone after it concluded. Reese's choice to strategically pursue other lawsuits while ignoring TracFone is legally insufficient to overcome the presumption of unreasonable delay.

Second, Reese argues that his delay in bringing suit was reasonable because of the serious health problems he experienced from 2000 to 2008. He argues that his ability to sue TracFone was significantly restricted because of his frequent dialysis treatments and eventual kidney transplant.

Generally, illness is not recognized as an adequate excuse for a plaintiff's delay in bringing suit. And although Reese certainly was afflicted with a debilitating illness, Reese's assertion that his delay was necessary because of his failing health is directly contradicted by his previous excuse—his extensive involvement in other litigation. Notwithstanding his poor health, Reese was able to file multiple suits against other infringers during his illness and litigate them to conclusion. (Reese Decl. ¶¶ 17–33.) The fact that Reese was able to competently litigate several other lawsuits undermines his contention that he was physically unable to pursue lawsuits against TracFone.

Moreover, Reese ignores the five years that have passed since his kidney transplant. Even after his health issues ended in 2008, Reese did and said nothing until he filed suit in 2013. Reese does not assert that his health issues continued after 2008. Thus, at a minimum Reese had three years after the resolution of his health issues before laches would be presumed.

Finally, an inability to find willing counsel, another of Reese's excuses, is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit. *Hall*, 93 F.3d at 1554. Additionally, Reese's litigation history shows that he has used multiple counsel at various times, and was fully capable of engaging in different litigation activities with different counsel—or by himself.

## C. Prejudice

A plaintiff can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the defendant. *Aukerman*, 960 F.2d 1030. Reese contends that his delay did not materially prejudice TracFone. But Reese attempts to prove this lack of prejudice by asserting that *TracFone* has failed to demonstrate that it has been prejudiced by Reese's delay—thus placing the burden of production on TracFone. This is incorrect; the *Auckerman* presumption places the burden of production on the plaintiff. *Hall*, 93 F.3d at 1553. Thus it is Reese's burden to come forward with affirmative evidence of a lack of prejudice. TracFone may remain

/ / /

"utterly mute on the issue of prejudice and nonetheless prevail[]." *Hall*, 93 F.3d at 1554.

### 1. *Evidentiary prejudice*

Reese has provided no affirmative evidence that TracFone will not suffer evidentiary prejudice from his eight-year delay.  In contrast, TracFone argues that they will suffer evidentiary prejudice because Reese is unable to account for evidence relevant to TracFone's defense of this action.  Reese does not dispute that he no longer has a complete of set documents produced in or generated during the course of his prior litigation relating to '150 Patent.  (SUF ¶ 18; Mot. Exs. 13, 14.)  To date, Reese has been unable to produce all the documents that existed for the *US West*, *Northern Telecom*, *Aastra*, *Samsung*, or *Verizon California* cases.  Additionally, Reese does not dispute that he no longer has a complete set of licensing agreements for the '150 or related patents.  (SUF ¶ 19; Mot. Exs. 13,14.)  Reese's prior counsel also admitted to destroying 68 folders of documents related to Reese's prior litigation—some of which directly involved the '150 Patent.  (SUF ¶ 20, Ex. 15.)

The loss of these documents is problematic for three major reasons.  First, because the licenses—many of which were given to cell-phone-handset manufacturers—may protect TracFone from Reese's infringement allegations.  If Reese licensed customers to use handsets that subscribe to TracFone's services, that license may protect TracFone from infringement claims. Second, those licenses are essential to allow TracFone to propose a reasonable-royalty rate for any potential damages involving unlicensed products.  Finally, TracFone's inequitable conduct defense and counterclaim will likely suffer from Reese's inability to produce documentation from his prior litigations—documentation which TracFone asserts was material and not disclosed during the examination of the '150 Patent.  In the absence of this evidence, TracFone's opportunity to defend itself against Reese's infringement claim is somewhat less than "full and fair."

/ / /

Reese attempts to argue that TracFone should endeavor to reconstruct the evidence for its defense, which he alleges should still be available from some other sources. But Reese presents no authority for his novel proposition that TracFone is required to attempt to gather whatever evidence remains and hope that it works for their defense. This burden lies with Reese, not TracFone. Consequently, Reese has not met his burden to come forward with affirmative evidence of a lack of evidentiary prejudice.

### 2. *Economic prejudice*

Reese also argues that TracFone has failed to prove that it has been economically prejudiced by Reese's delay in filing. But again, it is not TracFone's burden, as Reese argues, to demonstrate economic prejudice in light of the laches presumption. Rather, Reese has the burden of proving that TracFone has not been economically prejudiced by Reese's delay—which he does not attempt to do in his Opposition. Reese merely attacks TracFone's assertions of economic prejudice as "largely conclusory and lack[ing] any proof." (Opp'n 15.) This is insufficient. Accordingly, Reese has failed to adduce any affirmative evidence that TracFone has not been economically prejudiced by Reese's at least six-year delay in filing suit.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

## V.   CONCLUSION

Based on the undisputed facts, TracFone is entitled to the presumption of laches.  Reese has failed to prove that his delay was reasonable, or that TracFone suffered no prejudice as a result of the delay.  Accordingly, for the reasons discussed above, TracFone's Motion for Summary Judgment is **GRANTED**.  (ECF No. 30.)  A Judgment will issue.  The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to resolve.

**IT IS SO ORDERED.**

May 9, 2014

_____

**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**



**O**

<div style="text-align: center">

# United States District Court
# Central District of California

</div>

| | |
|---|---|
| MORRIS REESE, | Case No. 2:13-cv-05197-ODW(PLAx) |
|       Plaintiff, | |
|   v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [37]** |
| VERIZON WIRELESS SERVICES, INC., | |
|       Defendant. | |

## I. INTRODUCTION

Plaintiff Morris Reese notified virtually the entire cellular wireless industry of U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that providing call-waiting and caller-ID services infringed the '150 Patent. But it was not until May 2013—more than eight years later—that Reese filed patent-infringement suits against the five cellular service providers. Finding this delay unfair, the service providers, including Defendant Verizon Wireless Services, Inc., all individually filed motions for summary judgment against Reese based on the defense of laches. Faced with dismissal of his current suits because of his prolonged delay, Reese now offers excuses—such as his illness and involvement in other litigation—to justify his delay in bringing suit. Because none of Reese's explanations excuse his delay, the Court **GRANTS** Verizon's Motion for Summary Judgment. (ECF No. 37.)

/ / /

## II.    FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005.  (SUF ¶¶ 2–3; Ex. A.)  The '150 Patent is a continuation of the '009 Patent which issued July 30, 2002.  The '150 Patent expired in 2011, two years prior to Reese's suit against Verizon. (SUF ¶ 1.)

On April 13, 2005, Reese sent a letter to Verizon Communications, Inc. and Verizon Wireless asserting that it infringed the '150 Patent with its call-waiting ID service.  (SUF ¶¶ 4–5; Mot. Ex. D.)  The April 13, 2005 letter informed Verizon of the '150 Patent, and directed Verizon in particular to claims 25 and 36—which Reese indicated were "applicable to [Verizon] customers subscribed to 'Call Waiting ID' service.'"  (*Id.*)  Reese asserted that for Verizon's to continue to provide that service to its customers, Verizon required a license from Reese.  (*Id.*)  Reese did not inform Verizon that it would be sued if it did not take a license.  (*Id.*)

Verizon was one of twelve different telecommunications companies who received infringement notices from Reese in 2005—BellSouth, Cingular Wireless, Motorola, Nextel, Nokia, Qwest Communications, Samsung, SBC Communications, Sprint, and T-Mobile also received letters.  (*Id.*)  Between 2005 and 2013, Reese litigated several other patent-infringement lawsuits across the country.[1]  (SUF ¶¶ 10–11.)  Four of these suits involved the '150 Patent or its immediate parent.  (*Id.* ¶¶ 12–13.)  Reese was represented by counsel for all of these suits, with the exception of *Reese v. Verizon Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se.  (Reese Decl. ¶ 33.)

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv-80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

From 2000 to 2008, Reese experienced serious heath problems. Reese began dialysis treatments for renal failure in 2000. (*Id.* ¶ 29.) Reese's dialysis treatments were performed three times per week until Reese had a kidney transplant in 2008. (*Id.* ¶¶ 30–32.)

On May 29, 2013, Reese filed suit against Verizon—along with Sprint Nextel Corp., TracFone Wireless, Inc., United States Cellular Corporation, AT&T Mobility LLC, and T-Mobile USA, Inc. (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.) The Court severed the case on July 15, 2013. (*Id.* ECF No. 18.) Reese refiled a separate complaint against Verizon on July 18, 2013. (ECF No. 1.)

### III.  LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986). Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts

1  are required to view the facts and draw reasonable inferences in the light most
2  favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

3                          **IV.    DISCUSSION**

4           In the interest of fairness, those who are granted a monopoly under the patent
5  system have an obligation to enforce their rights in a timely manner. A defendant in a
6  patent-infringement suit may raise the equitable defense of laches when the plaintiff is
7  dilatory bringing suit and that delay prejudices the defendant. *A.C. Aukerman Co. v.*
8  *R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992). In patent cases, laches
9  bars recovery of damages for any infringement that occurs prior to the filing of suit.
10 *Id.* at 1040. A laches defense is a matter within the trial court's discretion based on
11 consideration of all of the facts in a particular case. *Id.* at 1040–41.

12          To prevail on a laches defense, a defendant must prove by a preponderance of
13 the evidence that: (1) the plaintiff knew or should have known of the infringement and
14 with that knowledge delayed filing suit for an unreasonable and inexcusable length of
15 time, and (2) the defendant was materially prejudiced by the delay. *Id.* at 1032; *see*
16 *also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010).
17 Where the delay in filing the suit exceeds six years, the court will presume the delay
18 was unreasonable and prejudicial to the defendant. 35 U.S.C. § 286; *Hearing*, 600
19 F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.) The burden is then on the
20 plaintiff to prove the existence and reasonableness of an excuse for the delay, and to
21 show a lack of prejudice to the infringer. *Hearing*, 600 F.3d at 1375.

22          Determining the length of the delay involves two sub-issues: when the delay
23 period begins to run and when the delay period ends. The delay period begins to run
24 from the time that the plaintiff had actual or constructive knowledge of the alleged
25 infringing activities. *Aukerman*, 960 F.2d at 1032; *Hearing Components*, 600 F.3d at
26 1375. But the plaintiff need not be certain that the conduct is infringing; time starts to
27 run when the patentee is aware of sufficient facts to form a reasonable belief that some
28 / / /

infringing conduct exists.  *Aukerman,* 960 F.2d at 1032.  The delay period ends no later than the date of the filing of suit.  (*Id.*)

The reasonableness of the delay is not determined by application of mechanical rules.  *Aukerman*, 960 F.2d at 1032.  Rather, the reasonableness of the delay depends on the particular facts and circumstances of the individual case.  *Id.*  The court must consider and weigh any justification offered by the plaintiff for its delay.  *Id.* at 1033.

Prejudice to the defendant may be either economic or evidentiary.  *Id.*  Economic prejudice arises when a defendant incurs damages that would likely have been prevented by earlier suit.  *See id.*  Economic prejudice is not merely damages attributable to patent infringement liability.  *Id.* at 1033.  Evidentiary or "defense" prejudice arises when the defendant can no longer present a full and fair defense on the merits due to the plaintiff's delay.  *Id.* at 1032.  This inability may be occasioned by "the loss of records, the death of a witness, [or] the unreliability of memories of long past events."  *Id.*

Verizon asserts that it is entitled to a laches presumption because of Reese's eight -year delay in filing suit.  Reese contends that Verizon is not entitled to a laches presumption because there is no evidence that the delay period, for laches purposes, began to run in 2005.  In the alternative, Reese argues that he can rebut the laches presumption because his delay was reasonable and resulted in no prejudice to Verizon. The Court considers each in turn.

**A. Laches Presumption**

Verizon asserts that it is entitled to a presumption that Reese's delay in filing suit was unreasonable and prejudicial to Verizon.  In support of this assertion, Verizon argues that Reese knew or should have known of Verizon's alleged infringement as of April 13, 2005, when Reese sent the infringement-allegation letter to Verizon.  Reese then failed to formally assert his infringement claims against Verizon until 2013. Verizon asserts that because this amounts to a more than eight-year delay, it is entitled to the laches presumption under § 286.

Reese argues that the delay period did not begin to run on April 13, 2005 because his letter to Verizon was not an infringement allegation, but merely an invitation for Verizon to open licensing discussions with Reese. Thus, Reese contends, there is no evidence that Reese actually knew of Verizon's infringement in 2005. This argument is contrary to the plain text of the letter. Reese states in his letter to Verizon that in order for it to continue to provide call-waiting-ID services, Verizon "requires a license from Mr. Reese." (Mot. Ex. D.) It strains credibility to argue that a patent owner who demands that a company take a license can somehow not know of his infringement claim on that patent.

Moreover, Federal Circuit precedent establishes that knowledge as to whether the device *actually* infringes is not required to establish laches. A good-faith belief is sufficient. *Aukerman,* 960 F.2d at 1032. Reese clearly believed that Verizon's call-waiting-ID services infringed the '150 Patent—evidenced by his attempt to open licensing negotiations in 2005. Accordingly, the Court finds that Reese had actual knowledge of Verizon's infringement at least on April 13, 2005. Because Reese failed to formally assert his rights until 2013, Verizon is entitled to a presumption of laches. Thus, Reese "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." *Id.* at 1038.

**B. Reasonableness of the delay**

Reese argues that even if he had knowledge of Verizon's infringement in 2005, his eight-year delay in filing suit was reasonable. Reese proffers two justifications for his delay: his involvement in other litigation and his worsening medical condition. Reese also claims he is entitled to leniency because he was representing himself for some of the litigation. The Court addresses each in turn.

First, Reese argues that his eight-year delay in filing suit against Verizon was reasonable because he was extensively involved in other litigation. On August 31,

2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony, Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate patent of the '150 Patent).  (Reese Decl. ¶ 17.)  That suit continued through January 31, 2007.  (*Id.* ¶ 18.)  Four months later, Reese sued land-line telephone service providers Southwestern Bell Telephone Company, GTE Southwest, and their parent companies AT&T and Verizon, for infringement of the '150 Patent.  (*Id.* ¶ 21.)  Reese voluntarily dismissed AT&T and Verizon from that action, but later brought a separate suit against the same companies that lasted from March 2011 to December 21, 2012. (*Id.* ¶¶ 24, 33.)  Approximately five months later, Reese filed this action against the Verizon, again alleging infringement of the '150 Patent.

Involvement in other enforcement litigation may, in some circumstances, excuse a plaintiff's delay in suing an alleged infringer.  But the Federal Circuit has held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying others—absent other factors—is a strategic decision that does not excuse or otherwise toll the presumption period for laches.  *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other enforcement litigation *may* be reasonable if the alleged infringer has knowledge of (1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its rights against the infringer at the conclusion of the other litigation.  Although there is no rigid requirement that such notice be given, "[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice."  *Hall*, 93 F.3d at 1554 (internal quotations omitted); *accord Aukerman*, 960 F.2d at 1039.

Here, Verizon received no communications from Reese for eight years after receipt of the 2005 infringement-allegation letters.  There is no evidence that Verizon had any notice—from Reese or otherwise—that Reese intended to sue it after the close of his other litigation.  Reese's eight-year silence made it reasonable for Verizon

to believe that Reese had declined to assert his rights against Verizon.  Where there is prior contact between the plaintiff and the accused infringer—especially when the contact is in the form of an infringement accusation—notice becomes essential to a finding of excusable delay.  A clear indication that the plaintiff intends to enforce its rights against the alleged infringer after the conclusion of the other litigation allows the accused infringer an opportunity to take steps to protect itself from liability. *Accord Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911 (E.D. Va. 1996).  Here, Verizon had no such opportunity.

The equivocal nature of Reese's contact with Verizon failed to give adequate notice that it may be subject to suit in the future.  The equities dictate that notice of intent to pursue infringement claims against Verizon at the conclusion of Reese's other litigation was required in this case.  Accordingly, Reese's choice to strategically pursue other lawsuits while ignoring Verizon is legally insufficient to overcome the presumption of unreasonable delay.

Second, Reese argues that his delay in bringing suit was reasonable because of the serious health problems he experienced from 2000 to 2008.  He argues that his ability to sue Verizon was significantly restricted because of his frequent dialysis treatments and eventual kidney transplant.

Generally, illness is not recognized as an adequate excuse for a plaintiff's delay in bringing suit.  And although Reese certainly was afflicted with a debilitating illness, Reese's assertion that his delay was necessary because of his failing health is directly contradicted by his previous excuse—his extensive involvement in other litigation.  Notwithstanding his poor health, Reese was able to file multiple suits against other infringers during his illness and litigate them to conclusion.  (Reese Decl. ¶¶ 17–33.)  The fact that Reese was able to competently litigate several other lawsuits undermines his contention that he was physically unable to pursue lawsuits against Verizon.

/ / /

/ / /

Moreover, Reese ignores the five years that have passed since his kidney transplant. Even after his health issues ended in 2008, Reese did and said nothing until he filed suit in 2013. Reese does not assert that his health issues continued after 2008. Thus, at a minimum Reese had three years after the resolution of his health issues before laches would be presumed.

Finally, an inability to find willing counsel, another of Reese's excuses, is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit. *Hall*, 93 F.3d at 1554. Additionally, Reese's litigation history shows that he has used multiple counsel at various times, and was fully capable of engaging in different litigation activities with different counsel—or by himself.

## C. Prejudice

A plaintiff can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the defendant. *Aukerman*, 960 F.2d 1030. Reese contends that his delay did not materially prejudice Verizon. But Reese attempts to prove this lack of prejudice by asserting that *Verizon* has failed to demonstrate that it has been prejudiced by Reese's delay—thus placing the burden of production on Verizon. This is incorrect; the *Auckerman* presumption places the burden of production on the plaintiff. *Hall*, 93 F.3d at 1553. Thus it is Reese's burden to come forward with affirmative evidence of a lack of prejudice. Verizon may remain "utterly mute on the issue of prejudice and nonetheless prevail[]." *Hall*, 93 F.3d at 1554.

### 1. *Evidentiary prejudice*

Reese has provided no affirmative evidence that Verizon will not suffer evidentiary prejudice from his eight-year delay. In contrast, Verizon argues that they will suffer evidentiary prejudice because Reese is unable to account for evidence relevant to Verizon's defense of this action. Reese does not dispute that he no longer has a complete of set documents produced in or generated during the course of his prior litigation relating to '150 Patent. (SUF ¶ 12; Mot. Exs. G, H.) To date, Reese has been unable to produce all the documents that existed for the *US West*, *Northern*

*Telecom*, *Aastra*, *Samsung*, or *Verizon California* cases.  Additionally, Reese does not dispute that he no longer has a complete set of licensing agreements for the '150 or related patents.  (SUF ¶¶ 12–14; Mot. Exs. G, H.)  Reese's prior counsel also admitted to destroying 68 folders of documents related to Reese's prior litigation—some of which directly involved the '150 Patent.  (SUF ¶ 14; Anderson Decl. ¶ 12, Ex. J.)  Although the contents of the documents are unknown, a chart provided by prior counsel shows a variety of potentially responsive documents including "current settlements" and "Reese/Verizon Issue."  (Mot. Ex. I.)

The loss of these documents is problematic for two major reasons.  First, because the licenses—many of which were given to cell-phone-handset manufacturers—may protect Verizon from Reese's infringement allegations.  If Reese licensed customers to use handsets that subscribe to Verizon's services or network, that license may protect Verizon from infringement claims. Second, those licenses are essential to allow Verizon to propose a reasonable-royalty rate for any potential damages involving unlicensed products.  In the absence of this evidence, Verizon's opportunity to defend itself against Reese's infringement claim is somewhat less than "full and fair."

Reese attempts to argue that Verizon should endeavor to reconstruct the evidence for its defense, which he alleges should still be available from some other sources.  But Reese presents no authority for his novel proposition that Verizon is required to attempt to gather whatever evidence remains and hope that it works for their defense.  This burden lies with Reese, not Verizon.  Consequently, Reese has not met his burden to come forward with affirmative evidence of a lack of evidentiary prejudice.

### 2.  *Economic prejudice*

Reese also argues that Verizon has failed to prove that it has been economically prejudiced by Reese's delay in filing.  But again, it is not Verizon's burden, as Reese argues, to demonstrate economic prejudice in light of the laches presumption.  Rather,

Reese has the burden of proving that Verizon has not been economically prejudiced by Reese's delay—which he does not attempt to do in his Opposition. Reese merely attacks Verizon's assertions of economic prejudice as "largely conclusory and lack[ing] any proof." (Opp'n 15.) This is insufficient. Accordingly, Reese has failed to adduce any affirmative evidence that Verizon has not been economically prejudiced by Reese's eight-year delay in filing suit.

## V. CONCLUSION

Based on the undisputed facts, Verizon is entitled to the presumption of laches. Reese has failed to prove that his delay was reasonable, or that Verizon suffered no prejudice as a result of the delay. Accordingly, for the reasons discussed above, Verizon's Motion for Summary Judgment is **GRANTED**. (ECF No. 37.) A Judgment will issue. The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to resolve.

**IT IS SO ORDERED.**

May 9, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

**O**

1
2
3
4
5
6
7
8        𝔘𝔫𝔦𝔱𝔢𝔡 𝔖𝔱𝔞𝔱𝔢𝔰 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔆𝔬𝔲𝔯𝔱
9        𝔆𝔢𝔫𝔱𝔯𝔞𝔩 𝔇𝔦𝔰𝔱𝔯𝔦𝔠𝔱 𝔬𝔣 𝔆𝔞𝔩𝔦𝔣𝔬𝔯𝔫𝔦𝔞
10

| | |
|---|---|
| 11  MORRIS REESE, | Case No. 2:13-cv-05198-ODW(PLAx) |
| 12                    Plaintiff, | |
| 13        v. | **ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [28]** |
| 14  AT&T MOBILITY II, LLC, | |
| 15                    Defendant. | |
| 16 | |

### I.    INTRODUCTION

17

18        Plaintiff Morris Reese notified virtually the entire cellular wireless industry of

19   U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that

20   providing call-waiting and caller-ID services infringed the '150 Patent.  But it was not

21   until May 2013—more than eight years later—that Reese filed patent-infringement

22   suits against the five cellular service providers.  Finding this delay unfair, the five

23   service providers, including Defendant AT&T Mobility II, Inc., all individually filed

24   motions for summary judgment against Reese based on the defense of laches.  Faced

25   with dismissal of his current suits because of his prolonged delay, Reese now offers

26   excuses—such as his illness and involvement in other litigation—to justify his delay

27   in bringing suit.  Because none of Reese's explanations excuse his delay, the Court

28   **GRANTS** AT&T's Motion for Summary Judgment.  (ECF No. 28.)

## II. FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005. (SUF ¶¶ 1–2; Ex. 1.) The '150 Patent is a continuation of the '009 Patent which issued on July 30, 2002. The '150 Patent expired in 2011, two years prior to Reese's suit against AT&T. (SUF ¶ 3.)

On April 13, 2005, Reese sent a letter to Cingular Wireless LLC asserting that it infringed the '150 Patent with its call-waiting ID service. (SUF ¶ 5; Mot. Ex. 4.) The April 13, 2005 letter informed Cingular of the '150 Patent, and directed it in particular to claims 25 and 36—which Reese indicated were "applicable to [Cingular] customers subscribed to 'Call Waiting ID' service.'" (*Id.*) Reese asserted that for Cingular's to continue to provide that service to its customers, AT&T required a license from Reese. (*Id.*) Reese also sent a second letter to Cingular on May 11, 2006, (Mot. Ex. 5.) Reese did not inform Cingular in either letter that it would be sued if it did not take a license. (Mot. Exs. 4, 5.)

On April 13, 2005, Cingular Wireless LLC was a parent company of Cingular Wireless II LLC. (Begué Del. ¶ 2.) Both Cingular Wireless LLC and Cingular Wireless II LLC operated to provide telephone services marketed under the "Cingular" name. (*Id.* ¶ 3.) On January 8, 2007, Cingular Wireless LLC changed its name to AT&T Mobility LLC. (*Id.* ¶ 2; Ex. A.) Similarly, on April 20, 2007, Cingular Wireless II LLC changed its name to AT&T Mobility II LLC. (*Id.* ¶ 2; Ex. B.) The marketing of the telephone services changed to the "AT&T" name as well. (*Id.* ¶ 3.) AT&T continues to provide the same call-waiting and caller-ID services provided by Cingular in 2005 and accused by Reese of infringing the '150 Patent. (*Id.*)

Cingular was one of twelve different telecommunications companies who received infringement notices from Reese in 2005—BellSouth, Verizon, Motorola, Nextel, Nokia, Qwest Communications, Samsung, SBC Communications, Sprint, and T-Mobile also received letters. (Mot. Ex. 4.) Between 2005 and 2013, Reese litigated

several other patent-infringement lawsuits across the country.[1]  (SUF ¶¶ 10–11.)  Four of these suits involved the '150 Patent or its immediate parent.  (*Id.* ¶¶ 12–13.)  Reese was represented by counsel for all of these suits, with the exception of *Reese v. Verizon Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se.  (Reese Decl. ¶ 33.)

From 2000 to 2008, Reese experienced serious heath problems.  Reese began dialysis treatments for renal failure in 2000.  (*Id.* ¶ 29.)  Reese's dialysis treatments were performed three times per week until Reese had a kidney transplant in 2008.  (*Id.* ¶¶ 30–32.)

On May 29, 2013, Reese filed suit against AT&T—along with Sprint Nextel Corp., TracFone Wireless, Inc., United States Cellular Corporation, Verizon, and T-Mobile USA, Inc.  (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.)  The Court severed the case on July 15, 2013.  (*Id.* ECF No. 18.)  Reese refiled a separate complaint against AT&T on July 18, 2013.  (ECF No. 1.)

## III.  LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv-80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

A002363

issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

In the interest of fairness, those who are granted a monopoly under the patent system have an obligation to enforce their rights in a timely manner. A defendant in a patent-infringement suit may raise the equitable defense of laches when the plaintiff is dilatory bringing suit and that delay prejudices the defendant. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992). In patent cases, laches bars recovery of damages for any infringement that occurs prior to the filing of suit. *Id.* at 1040. A laches defense is a matter within the trial court's discretion based on consideration of all of the facts in a particular case. *Id.* at 1040–41.

To prevail on a laches defense, a defendant must prove by a preponderance of the evidence that: (1) the plaintiff knew or should have known of the infringement and with that knowledge delayed filing suit for an unreasonable and inexcusable length of time, and (2) the defendant was materially prejudiced by the delay. *Id.* at 1032; *see also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010). Where the delay in filing the suit exceeds six years, the court will presume the delay

was unreasonable and prejudicial to the defendant.  35 U.S.C. § 286; *Hearing*, 600 F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.)  The burden is then on the plaintiff to prove the existence and reasonableness of an excuse for the delay, and to show a lack of prejudice to the infringer.  *Hearing*, 600 F.3d at 1375.

Determining the length of the delay involves two sub-issues: when the delay period begins to run and when the delay period ends.  The delay period begins to run from the time that the plaintiff had actual or constructive knowledge of the alleged infringing activities.  *Aukerman*, 960 F.2d at 1032; *Hearing Components*, 600 F.3d at 1375.  But the plaintiff need not be certain that the conduct is infringing; time starts to run when the patentee is aware of sufficient facts to form a reasonable belief that some infringing conduct exists.  *Aukerman,* 960 F.2d at 1032.  The delay period ends no later than the date of the filing of suit.  (*Id.*)

The reasonableness of the delay is not determined by application of mechanical rules.  *Aukerman*, 960 F.2d at 1032.  Rather, the reasonableness of the delay depends on the particular facts and circumstances of the individual case.  *Id.*  The court must consider and weigh any justification offered by the plaintiff for its delay.  *Id.* at 1033.

Prejudice to the defendant may be either economic or evidentiary.  *Id.*  Economic prejudice arises when a defendant incurs damages that would likely have been prevented by earlier suit.  *See id.*  Economic prejudice is not merely damages attributable to patent infringement liability.  *Id.* at 1033.  Evidentiary or "defense" prejudice arises when the defendant can no longer present a full and fair defense on the merits due to the plaintiff's delay.  *Id.* at 1032.  This inability may be occasioned by "the loss of records, the death of a witness, [or] the unreliability of memories of long past events."  *Id.*

AT&T asserts that it is entitled to a laches presumption because of Reese's eight -year delay in filing suit.  Reese contends that AT&T is not entitled to a laches presumption because there is no evidence that the delay period, for laches purposes, began to run in 2005.  In the alternative, Reese argues that he can rebut the laches

presumption because his delay was reasonable and resulted in no prejudice to AT&T. The Court considers each in turn.

### A. Laches Presumption

AT&T asserts that it is entitled to a presumption that Reese's delay in filing suit was unreasonable and prejudicial to AT&T. In support of this assertion, AT&T argues that Reese knew or should have known of AT&T's alleged infringement as of April 13, 2005, when Reese sent the infringement-allegation letter to Cingular. Reese then failed to formally assert his infringement claims against AT&T until 2013. AT&T asserts that because this amounts to a more than eight-year delay, it is entitled to the laches presumption under § 286.

Reese argues that the delay period did not begin to run on April 13, 2005 because AT&T didn't exist in 2005. This argument has no merit. AT&T is the same entity as the Cingular Wireless to which Reese directed his infringement allegation letters—it merely underwent a corporate name change. (Begué Del. ¶¶ 2–3; Exs. A, B.) In fact, in his amended interrogatory responses Reese recognized that Cingular Wireless was the "predecessor company" and the "entity which became AT&T Mobility II LLC." (Galluzzo Decl. Ex. 8.) Reese also admitted that he first provided notice to AT&T of his infringement claim "through correspondence to Cingular Wireless sent April 13, 2005." (*Id.*)

Two days after the Court granted AT&T's request to file this Motion Reese again amended his interrogatory responses; despite his prior admissions, Reese now claims he did not become aware of AT&T until 2013. (*Id.* Exs. 9, 10.) This amended response is self-serving, suspect, and insufficient to raise a genuine issue of material fact. *Accord Gagné v.Nw. Nat'l Ins. Co.*, 881 F.2d 309, 315 (6th Cir. 1989) ("a party may not create a factual issue by filing an affidavit, after a motion for summary judgment has been made, which contradicts his earlier deposition testimony"); *Trans-Orient Marine Corp. v. Star Trading & Marine, Inc.*, 925 F.2d 566, 572 (2d Cir. 1991) ("a party may not, in order to defeat a summary judgment motion,

create a material issue of fact by submitting an affidavit disputing his own prior sworn testimony"); *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985) (holding that a "party should not be allowed to create issues of credibility by contradicting his own earlier testimony."); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. at 249("If the [non-movant's] evidence is merely colorable . . . or is not significantly probative . . . summary judgment may be granted.").

Reese presents no authority for his assertion that AT&T, as a different legal entity from Cingular, must independently show entitlement to a laches defense. There has never been any magic in a corporate entity; Federal Circuit precedent confirms that the related equitable defense of estoppel applies to successors-in-interest where privity has been established. *Radio Sys. Corp. v. Lalor*, 709 F.3d 1124, 1131 (Fed. Cir. 2013); *see also Jamesbury Corp. v. Litton Indus. Prods., Inc.,* 839 F.2d 1544, 1555 (Fed.Cir.1988), *overruled on other grounds by Aukerman,* 960 F.2d at 1042 (holding that a successor-defendant is entitled to rely on the lack of communication to its predecessor as well as to itself). Although generally personal in nature, equitable defenses are available to successors-in-interest so long as the equitable doctrine's aims are not somehow frustrated by such an application.

The key inquiries for a laches defense are *when* Reese new of his infringement claims, and *how long* Reese waited before asserting those claims. So long as the corporate name change did not have the effect of concealing the entity's identity—such that Reese was impeded from bringing suit—there is no principled reason to refuse to allow AT&T to assert Cingular's laches defense. *Accord Autoclave Engineers, Inc. v. Duriron Co., Inc.*, No. 73-2640, 1976 WL 21019 (E.D. Pa. Feb. 19, 1976) (permitting "tacking" of the delay period for laches purposes where the identity of the business entity remained unchanged after acquisition). To hold otherwise to would be to exalt form over substance.

Here, Reese knew of Cingular's infringement in 2005 as evidenced by his infringement-allegation letter. (Mot. Ex. 4.) Cingular's corporate name change to

AT&T did not change the corporation's identity—the business was carried on and controlled as it was before the change, just under a new name. (Begué Del. ¶¶ 2–3.) There is no evidence that Reese was impeded from bringing suit by this name change. Most importantly, AT&T continues to provide the same call-waiting and caller-ID services provided by Cingular in 2005 that Reese asserts infringe the '150 Patent. (*Id.* ¶ 3.) Accordingly, AT&T may rely on the 2005 infringement-allegation letters sent to Cingular for purposes of its laches defense.

In the alternative, Reese argues his letter to AT&T was not an infringement allegation, but merely an invitation for AT&T to open licensing discussions with Reese. Thus, Reese contends, there is no evidence that Reese actually knew of AT&T's infringement in 2005. This argument is contrary to the plain text of the letter. Reese states in his letter to AT&T that in order for it to continue to provide call-waiting-ID services, AT&T "requires a license from Mr. Reese." (Mot. Ex. 1.) It strains credibility to argue that a patent owner who demands that a company take a license can somehow not know of his infringement claim on that patent.

Moreover, Federal Circuit precedent establishes that knowledge as to whether the device *actually* infringes is not required to establish laches. A good-faith belief is sufficient. *Aukerman,* 960 F.2d at 1032. Reese clearly believed that AT&T's call-waiting-ID services infringed the '150 Patent—evidenced by his attempt to open licensing negotiations in 2005. Accordingly, the Court finds that Reese had actual knowledge of AT&T's infringement at least on April 13, 2005. Because Reese failed to formally assert his rights until 2013, AT&T is entitled to a presumption of laches. Thus, Reese "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the delay was reasonable or that the movant did not suffer prejudice caused by the wait." *Id.* at 1038.

/ / /

/ / /

## B. Reasonableness of the delay

Reese argues that even if he had knowledge of AT&T's infringement in 2005, his eight-year delay in filing suit was reasonable.  Reese proffers two justifications for his delay: his involvement in other litigation and his worsening medical condition.  Reese also claims he is entitled to leniency because he was representing himself for some of the litigation.  The Court addresses each in turn.

First, Reese argues that his eight-year delay in filing suit against AT&T was reasonable because he was extensively involved in other litigation.  On August 31, 2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony, Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate patent of the '150 Patent).  (Reese Decl. ¶ 17.)  That suit continued through January 31, 2007.  (*Id.* ¶ 18.)  Four months later, Reese sued land-line telephone service providers Southwestern Bell Telephone Company, GTE Southwest, and their parent companies AT&T and Verizon, for infringement of the '150 Patent.  (*Id.* ¶ 21.)  Reese voluntarily dismissed AT&T and Verizon from that action, but later brought a separate suit against the same companies that lasted from March 2011 to December 21, 2012.  (*Id.* ¶¶ 24, 33.)  Approximately five months later, Reese filed this action against the AT&T, again alleging infringement of the '150 Patent.

Involvement in other enforcement litigation may, in some circumstances, excuse a plaintiff's delay in suing an alleged infringer.  But the Federal Circuit has held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying others—absent other factors—is a strategic decision that does not excuse or otherwise toll the presumption period for laches.  *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548, 1554 (Fed. Cir. 1996).

In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other enforcement litigation *may* be reasonable if the alleged infringer has knowledge of (1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its rights against the infringer at the conclusion of the other litigation.  Although there is

1    no rigid requirement that such notice be given, "[w]here there is prior contact
2    [between the patentee and the accused infringer], the overall equities may require
3    appropriate notice."    *Hall*, 93 F.3d at 1554 (internal quotations omitted); *accord*
4    *Aukerman*, 960 F.2d at 1039.

5          Here, AT&T received no communications from Reese for eight years after
6    receipt of the 2005 infringement-allegation letters.  There is no evidence that AT&T
7    had any notice—from Reese or otherwise—that Reese intended to sue it after the
8    close of his other litigation.  Reese's eight-year silence made it reasonable for AT&T
9    to believe that Reese had simply declined to assert his rights against AT&T.  Where
10   there is prior contact between the plaintiff and the accused infringer—especially when
11   the contact is in the form of an infringement accusation—notice becomes essential to
12   a finding of excusable delay.  A clear indication that the plaintiff intends to enforce its
13   rights against the alleged infringer after the conclusion of the other litigation allows
14   the accused infringer an opportunity to take steps to protect itself from liability.
15   *Accord Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911 (E.D. Va. 1996).  Here,
16   AT&T had no such opportunity.

17         The equivocal nature of Reese's contact with AT&T failed to give adequate
18   notice that it may be subject to suit in the future.  The equities dictate that notice of
19   intent to pursue infringement claims against AT&T at the conclusion of Reese's other
20   litigation was required in this case.  Accordingly, Reese's choice to strategically
21   pursue other lawsuits while ignoring AT&T is legally insufficient to overcome the
22   presumption of unreasonable delay.

23         Second, Reese argues that his delay in bringing suit was reasonable because of
24   the serious health problems he experienced from 2000 to 2008.  He argues that his
25   ability to sue AT&T was significantly restricted because of his frequent dialysis
26   treatments and eventual kidney transplant.

27         Generally, illness is not recognized as an adequate excuse for a plaintiff's delay
28   in bringing suit.  And although Reese certainly was afflicted with a debilitating illness,

Reese's assertion that his delay was necessary because of his failing health is directly contradicted by his previous excuse—his extensive involvement in other litigation. Notwithstanding his poor health, Reese was able to file multiple suits against other infringers during his illness and litigate them to conclusion. (Reese Decl. ¶¶ 17–33.) The fact that Reese was able to competently litigate several other lawsuits undermines his contention that he was physically unable to pursue lawsuits against AT&T.

Moreover, Reese ignores the five years that have passed since his kidney transplant. Even after his health issues ended in 2008, Reese did and said nothing until he filed suit in 2013. Reese does not assert that his health issues continued after 2008. Thus, at a minimum Reese had three years after the resolution of his health issues before laches would be presumed.

Finally, an inability to find willing counsel, another of Reese's excuses, is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit. *Hall*, 93 F.3d at 1554. Additionally, Reese's litigation history shows that he has used multiple counsel at various times, and was fully capable of engaging in different litigation activities with different counsel—or by himself.

### C. Prejudice

A plaintiff can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the defendant. *Aukerman*, 960 F.2d 1030. Reese contends that his delay did not materially prejudice AT&T. But Reese attempts to prove this lack of prejudice by asserting that *AT&T* has failed to demonstrate that it has been prejudiced by Reese's delay—thus placing the burden of production on AT&T. This is incorrect; the *Auckerman* presumption places the burden of production on the plaintiff. *Hall*, 93 F.3d at 1553. Thus it is Reese's burden to come forward with affirmative evidence of a lack of prejudice. AT&T may remain "utterly mute on the issue of prejudice and nonetheless prevail[]." *Hall*, 93 F.3d at 1554.

/ / /

/ / /

### 1. *Evidentiary prejudice*

Reese has provided no affirmative evidence that AT&T will not suffer evidentiary prejudice from his eight-year delay. In contrast, AT&T argues that it will suffer evidentiary prejudice because Reese is unable to account for evidence relevant to AT&T's defense of this action. Reese does not dispute that he no longer has a complete of set documents produced in or generated during the course of his prior litigation relating to '150 Patent. (SUF ¶¶ 21–24.) To date, Reese has been unable to produce all the documents that existed for the *US West*, *Northern Telecom*, *Aastra*, *Samsung*, or *Verizon California* cases. (*Id.* ¶ 22.) Additionally, Reese does not dispute that he no longer has a complete set of licensing agreements for the '150 or related patents. (*Id.* ¶¶ 21, 22, 24.) Reese's prior counsel also admitted to destroying 68 folders of documents related to Reese's prior litigation—some of which directly involved the '150 Patent. (*Id.* ¶ 25.)

The loss of these documents is problematic for two major reasons. First, because the licenses—many of which were given to cell-phone-handset manufacturers—may protect AT&T from Reese's infringement allegations. If Reese licensed customers to use handsets that subscribe to AT&T's services or network, that license may protect AT&T from infringement claims. Second, those licenses are essential to allow AT&T to propose a reasonable-royalty rate for any potential damages involving unlicensed products. In the absence of this evidence, AT&T's opportunity to defend itself against Reese's infringement claim is somewhat less than "full and fair."

Reese attempts to argue that AT&T should endeavor to reconstruct the evidence for its defense, which he alleges should still be available from some other sources. But Reese presents no authority for his novel proposition that AT&T is required to attempt to gather whatever evidence remains and hope that it works for their defense. This burden lies with Reese, not AT&T. Consequently, Reese has not met his burden to come forward with affirmative evidence of a lack of evidentiary prejudice.

2. *Economic prejudice*

Reese also argues that AT&T has failed to prove that it has been economically prejudiced by Reese's delay in filing. But again, it is not AT&T's burden, as Reese argues, to demonstrate economic prejudice in light of the laches presumption. Rather, Reese has the burden of proving that AT&T has not been economically prejudiced by Reese's delay—which he does not attempt to do in his Opposition. Reese merely attacks AT&T's assertions of economic prejudice as "largely conclusory and lack[ing] any proof." (Opp'n 15.) This is insufficient. Accordingly, Reese has failed to adduce any affirmative evidence that AT&T has not been economically prejudiced by Reese's eight-year delay in filing suit.

## V.    CONCLUSION

Based on the undisputed facts, AT&T is entitled to the presumption of laches. Reese has failed to prove that his delay was reasonable, or that AT&T suffered no prejudice as a result of the delay. Accordingly, for the reasons discussed above, AT&T's Motion for Summary Judgment is **GRANTED**. (ECF No. 28) A Judgment will issue. The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to decide.


**IT IS SO ORDERED.**


May 9, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

**O**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# United States District Court
# Central District of California

MORRIS REESE,

                  Plaintiff,

     v.

T-MOBILE USA, INC.,

                 Defendant.

Case No. 2:13-cv-05199-ODW(PLAx)

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT [21]**

## I.  INTRODUCTION

Plaintiff Morris Reese notified virtually the entire cellular wireless industry of U.S. Patent No. 6,868,150 ("the '150 Patent") in 2005 through letters alleging that providing call-waiting and caller-ID services infringed the '150 Patent.  But it was not until May 2013—more than eight years later—that Reese filed patent-infringement suits against the five cellular service providers.  Finding this delay unfair, the service providers, including Defendant T-Mobile USA, Inc., all individually filed motions for summary judgment against Reese based on the defense of laches.  Faced with dismissal of his current suits because of his prolonged delay, Reese now offers excuses—such as his illness and involvement in other litigation—to justify his delay in bringing suit.  Because none of Reese's explanations excuse his delay, the Court **GRANTS** T-Mobile's Motion for Summary Judgment.  (ECF No. 21.)

## II.    FACTUAL BACKGROUND

Reese is the sole named inventor on the '150 Patent, which issued on March 15, 2005.  (SUF ¶ 2.)  The '150 Patent is a continuation of the '009 Patent which issued July 30, 2002.  (*Id.* ¶ 47.)  The '150 Patent expired in 2011, two years prior to Reese's suit against T-Mobile. (*Id.* ¶ 30.)

On April 13, 2005, Reese sent a letter to T-Mobile Communications, Inc. and T-Mobile Wireless asserting that it infringed the '150 Patent with its call-waiting ID service.  (SUF ¶¶ 4–5; Mot. Ex. 1.)  The April 13, 2005 letter informed T-Mobile of the '150 Patent, and directed T-Mobile in particular to claims 25 and 36—which Reese indicated were "applicable to [T-Mobile] customers subscribed to 'Call Waiting ID' service.'"  (Mot. Ex 1.)  Reese asserted that for T-Mobile's to continue to provide that service to its customers, T-Mobile required a license from Reese.  (*Id.*)

T-Mobile responded on April 22, 2005, explaining that it was neither a developer nor manufacturer of wireless telecommunications devices, and thus believed it did not infringe the '150 Patent.  (SUF ¶ 8; Mot. Ex. 2.)  Reese responded on June 6, 2005, requesting to know "within the next two weeks as to how [T-Mobile] would like to proceed with this matter." (SUF ¶ 9; Mot. Ex. 3.)   Reese neither informed T-Mobile that it would be sued if it did not take a license, nor asserted that T-Mobile's status was sufficient to avoid infringement.  (SUF ¶ 10–11: Mot. Ex. 3.)

On May 9, 2006, Reese wrote T-Mobile a second letter.    (SUF ¶ 20; Mot. Ex. 4.)  Again, Reese stated that T-Mobile needed to discuss licensing with Reese, and again he did not inform T-Mobile that it would be sued if it did not take a license. (SUF ¶ 21, Mot. Ex. 4.)  On May 15, 2006 T-Mobile responded, reminding Reese that it was neither a developer nor manufacturer of wireless telecommunications devices. (SUF ¶¶ 24–25.)  There is no evidence that Reese contacted T-Mobile again during the subsequent eight years.  (SUF ¶ 21).

/ / /

/ / /

Between 2005 and 2013, Reese litigated several other patent-infringement lawsuits across the country.[1]  (SUF ¶¶ 40–42.)  Four of these suits involved the '150 Patent or its immediate parent.  Reese was represented by counsel for all of these suits, with the exception of *Reese v. T-Mobile Cal., Inc. et al.*, Case No. CV-11-01934 SJO (C.D. Cal. Aug. 11, 2011), which he litigated pro se.  (Reese Decl. ¶ 33.)

From 2000 to 2008, Reese experienced serious heath problems.  Reese began dialysis treatments for renal failure in 2000.  (*Id.* ¶ 29.)  Reese's dialysis treatments were performed three times per week until Reese had a kidney transplant in 2008.  (*Id.* ¶¶ 30–32.)

On May 29, 2013, Reese filed suit against T-Mobile—along with Sprint Nextel Corp., TracFone Wireless, Inc., United States Cellular Corporation, AT&T Mobility LLC, and Verizon.  (*Morris Reese v. Sprint Nextel Corporation et al.*, 2:13-cv-03811-ODW-PLA (C.D. Cal. May 29, 2013) ECF No. 1.)  The Court severed the case on July 15, 2013.  (*Id.* ECF No. 18.)  Reese refiled a separate complaint against T-Mobile on July 18, 2013.  (ECF No. 1.)

### III.  LEGAL STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  The moving party bears the initial burden of establishing the absence of a genuine issue of material fact.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).  Once the moving party has met its burden, the nonmoving party must go beyond the pleadings and identify specific facts through admissible evidence that show a genuine

---

[1] *Reese v. BellSouth Telecommunications*, No. 5:97-cv-00568-BO (E.D.N.C Nov. 14, 1997); *Reese v. U.S. West Inc.*, No. 98-cv-80575-CRW (S.D. Iowa Mar. 12, 1999) (transferred to *Reese v. U.S. West Inc.*, No. 1:99-cv-00773-WDM-MJW (D. Col. Sept. 23, 2002)); *N. Telecom, Inc. v. Reese*, No. 2:98-cv- 09591-LGB (C.D. Cal. Feb. 9, 1999) (transferred to *N. Telecom, Inc. v. Reese*, No. 4:99-cv-80081-CRW (S.D. Iowa Mar. 10, 1999)); *Reese v. Aastra Technologies*, No. 2:03-cv-00267-TJW (E.D. Tex. Feb. 9, 2005); *Reese v. Samsung Telecommunications America, L.P.*, No. 2:05-cv- 00415-DF (E.D. Tex. Jan. 31, 2007); *Reese v. Southwestern Bell Telephone, L.P., et. al.*, Case No. 2:07-CV-219 (E.D. Tex. Dec. 23, 2008); and *Reese v. Verizon California, Inc. and AT&T California*, Case No. CV-11-01934 SJO (C.D. Cal. Dec. 21, 2012).

issue for trial. *Id.*; Fed. R. Civ. P. 56(c). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *Thornhill's Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

A genuine issue of material fact must be more than a scintilla of evidence, or evidence that is merely colorable or not significantly probative. *Addisu v. Fred Meyer*, 198 F.3d 1130, 1134 (9th Cir. 2000). A disputed fact is "material" where the resolution of that fact might affect the outcome of the suit under the governing law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1968). An issue is "genuine" if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party. *Id.* Where the moving and nonmoving parties' versions of events differ, courts are required to view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## IV. DISCUSSION

In the interest of fairness, those who are granted a monopoly under the patent system have an obligation to enforce their rights in a timely manner. A defendant in a patent-infringement suit may raise the equitable defense of laches when the plaintiff is dilatory bringing suit and that delay prejudices the defendant. *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1030 (Fed. Cir. 1992). In patent cases, laches bars recovery of damages for any infringement that occurs prior to the filing of suit. *Id.* at 1040. A laches defense is a matter within the trial court's discretion based on consideration of all of the facts in a particular case. *Id.* at 1040–41.

To prevail on a laches defense, a defendant must prove by a preponderance of the evidence that: (1) the plaintiff knew or should have known of the infringement and with that knowledge delayed filing suit for an unreasonable and inexcusable length of time, and (2) the defendant was materially prejudiced by the delay. *Id.* at 1032; *see also Hearing Components, Inc. v. Shure, Inc.*, 600 F.3d 1357, 1375 (Fed. Cir. 2010). Where the delay in filing the suit exceeds six years, the court will presume the delay

was unreasonable and prejudicial to the defendant.  35 U.S.C. § 286; *Hearing*, 600 F.3d at 1375 (citing *Aukerman*, 960 F.2d at 1035–36.)  The burden is then on the plaintiff to prove the existence and reasonableness of an excuse for the delay, and to show a lack of prejudice to the infringer.  *Hearing*, 600 F.3d at 1375.

Determining the length of the delay involves two sub-issues: when the delay period begins to run and when the delay period ends.  The delay period begins to run from the time that the plaintiff had actual or constructive knowledge of the alleged infringing activities.  *Aukerman*, 960 F.2d at 1032; *Hearing Components*, 600 F.3d at 1375.  But the plaintiff need not be certain that the conduct is infringing; time starts to run when the patentee is aware of sufficient facts to form a reasonable belief that some infringing conduct exists.  *Aukerman,* 960 F.2d at 1032.  The delay period ends no later than the date of the filing of suit.  (*Id.*)

The reasonableness of the delay is not determined by application of mechanical rules.  *Aukerman*, 960 F.2d at 1032.  Rather, the reasonableness of the delay depends on the particular facts and circumstances of the individual case.  *Id.*  The court must consider and weigh any justification offered by the plaintiff for its delay.  *Id.* at 1033.

Prejudice to the defendant may be either economic or evidentiary.  *Id.*  Economic prejudice arises when a defendant incurs damages that would likely have been prevented by earlier suit.  *See id.*  Economic prejudice is not merely damages attributable to patent infringement liability.  *Id.* at 1033.  Evidentiary or "defense" prejudice arises when the defendant can no longer present a full and fair defense on the merits due to the plaintiff's delay.  *Id.* at 1032.  This inability may be occasioned by "the loss of records, the death of a witness, [or] the unreliability of memories of long past events."  *Id.*

T-Mobile asserts that it is entitled to a laches presumption because of Reese's eight-year delay in filing suit.  Reese contends that T-Mobile is not entitled to a laches presumption because there is no evidence that the delay period, for laches purposes, began to run in 2005.  In the alternative, Reese argues that he can rebut the laches

presumption because his delay was reasonable and resulted in no prejudice to T-Mobile. The Court considers each in turn.

### A. Laches Presumption

T-Mobile asserts that it is entitled to a presumption that Reese's delay in filing suit was unreasonable and prejudicial to T-Mobile. In support of this assertion, T-Mobile argues that Reese knew or should have known of T-Mobile's alleged infringement as of April 13, 2005, when Reese sent the infringement-allegation letter to T-Mobile. Reese then failed to formally assert his infringement claims against T-Mobile until 2013. T-Mobile asserts that because this amounts to a more than eight-year delay, it is entitled to the laches presumption under § 286.

Reese argues that the delay period did not begin to run on April 13, 2005 because his letter to T-Mobile was not an infringement allegation, but merely an invitation for T-Mobile to open licensing discussions with Reese. Thus, Reese contends, there is no evidence that Reese actually knew of T-Mobile's infringement in 2005. This argument is contrary to the plain text of the letter. Reese states in his letter to T-Mobile that in order for it to continue to provide call-waiting-ID services, T-Mobile "requires a license from Mr. Reese." (Mot. Ex. 1.) It strains credibility to argue that a patent owner who demands that a company take a license can somehow not know of his infringement claim on that patent.

Moreover, Federal Circuit precedent establishes that knowledge as to whether the device *actually* infringes is not required to establish laches. A good-faith belief is sufficient. *Aukerman,* 960 F.2d at 1032. Reese clearly believed that T-Mobile's call-waiting-ID services infringed the '150 Patent—evidenced by his attempt to open licensing negotiations in 2005. Accordingly, the Court finds that Reese had actual knowledge of T-Mobile's infringement at least on April 13, 2005. Because Reese failed to formally assert his rights until 2013, T-Mobile is entitled to a presumption of laches. Thus, Reese "must come forward with evidence sufficient to put the existence of these presumed undisputed facts into genuine dispute, either by showing that the

1     delay was reasonable or that the movant did not suffer prejudice caused by the wait."

2     *Id.* at 1038.

3        **B. Reasonableness of the delay**

4        Reese argues that even if he had knowledge of T-Mobile's infringement in

5     2005, his eight-year delay in filing suit was reasonable. Reese proffers two

6     justifications for his delay: his involvement in other litigation and his worsening

7     medical condition. Reese also claims he is entitled to leniency because he was

8     representing himself for some of the litigation. The Court addresses each in turn.

9        First, Reese argues that his eight-year delay in filing suit against T-Mobile was

10    reasonable because he was extensively involved in other litigation. On August 31,

11    2005, Reese filed suit against cellular phone manufacturers Samsung, Motorola, Sony,

12    Siemens, LG, RiM and Palm, alleging infringement of the '009 Patent (the immediate

13    patent of the '150 Patent). (Reese Decl. ¶ 17.) That suit continued through January

14    31, 2007. (*Id.* ¶ 18.) Four months later, Reese sued land-line telephone service

15    providers Southwestern Bell Telephone Company, GTE Southwest, and their parent

16    companies AT&T and T-Mobile, for infringement of the '150 Patent. (*Id.* ¶ 21.)

17    Reese voluntarily dismissed AT&T and T-Mobile from that action, but later brought a

18    separate suit against the same companies that lasted from March 2011 to December

19    21, 2012. (*Id.* ¶¶ 24, 33.) Approximately five months later, Reese filed this action

20    against T-Mobile, again alleging infringement of the '150 Patent.

21        Involvement in other enforcement litigation may, in some circumstances,

22    excuse a plaintiff's delay in suing an alleged infringer. But the Federal Circuit has

23    held that a plaintiff's calculated choice to proceed with certain lawsuits while delaying

24    others—absent other factors—is a strategic decision that does not excuse or otherwise

25    toll the presumption period for laches. *Hall v. Aqua Queen Mfg., Inc.*, 93 F.3d 1548,

26    1554 (Fed. Cir. 1996).

27        In *Hall*, the Federal Circuit noted that delay occasioned by involvement in other

28    enforcement litigation *may* be reasonable if the alleged infringer has knowledge of

(1) the existence of the other litigation, and (2) the plaintiff's intent to enforce its rights against the infringer at the conclusion of the other litigation. Although there is no rigid requirement that such notice be given, "[w]here there is prior contact [between the patentee and the accused infringer], the overall equities may require appropriate notice." *Hall*, 93 F.3d at 1554 (internal quotations omitted); *accord Aukerman*, 960 F.2d at 1039.

Here, T-Mobile received no communications from Reese for seven years after the infringement-allegation letters of 2005 and 2006. There is no evidence that T-Mobile had any notice—from Reese or otherwise—that Reese intended to sue it after the close of his other litigation. Reese's seven-year silence and eight-year inaction made it reasonable for T-Mobile to believe that Reese had declined to assert his rights against T-Mobile. Where there is prior contact between the plaintiff and the accused infringer—especially when the contact is in the form of an infringement accusation—notice becomes essential to a finding of excusable delay. A clear indication that the plaintiff intends to enforce its rights against the alleged infringer after the conclusion of the other litigation allows the accused infringer an opportunity to take steps to protect itself from liability. *Accord Odetics, Inc. v. Storage Tech. Corp.*, 919 F. Supp. 911 (E.D. Va. 1996). Here, T-Mobile had no such opportunity.

The equivocal nature of Reese's contacts with T-Mobile failed to give adequate notice that it may be subject to suit in the future. The equities dictate that notice of intent to pursue infringement claims against T-Mobile at the conclusion of Reese's other litigation was required in this case. Accordingly, Reese's choice to strategically pursue other lawsuits while ignoring T-Mobile is legally insufficient to overcome the presumption of unreasonable delay.

Second, Reese argues that his delay in bringing suit was reasonable because of the serious health problems he experienced from 2000 to 2008. He argues that his ability to sue T-Mobile was significantly restricted because of his frequent dialysis treatments and eventual kidney transplant.

Generally, illness is not recognized as an adequate excuse for a plaintiff's delay in bringing suit. And although Reese certainly was afflicted with a debilitating illness, Reese's assertion that his delay was necessary because of his failing health is directly contradicted by his previous excuse—his extensive involvement in other litigation. Notwithstanding his poor health, Reese was able to file multiple suits against other infringers during his illness and litigate them to conclusion. (Reese Decl. ¶¶ 17–33.) The fact that Reese was able to competently litigate several other lawsuits undermines his contention that he was physically unable to pursue lawsuits against T-Mobile.

Moreover, Reese ignores the five years that have passed since his kidney transplant. Even after his health issues ended in 2008, Reese did and said nothing until he filed suit in 2013. Reese does not assert that his health issues continued after 2008. Thus, at a minimum Reese had three years after the resolution of his health issues before laches would be presumed.

Finally, an inability to find willing counsel, another of Reese's excuses, is widely rejected as a legally cognizable reason to excuse an unreasonable delay in filing suit. *Hall*, 93 F.3d at 1554. Additionally, Reese's litigation history shows that he has used multiple counsel at various times, and was fully capable of engaging in different litigation activities with different counsel—or by himself.

**C. Prejudice**

A plaintiff can also rebut the laches presumption by raising a genuine fact issue regarding the absence of prejudice to the defendant. *Aukerman*, 960 F.2d 1030. Reese contends that his delay did not materially prejudice T-Mobile. But Reese attempts to prove this lack of prejudice by asserting that *T-Mobile* has failed to demonstrate that it has been prejudiced by Reese's delay—thus placing the burden of production on T-Mobile. This is incorrect; the *Auckerman* presumption places the burden of production on the plaintiff. *Hall*, 93 F.3d at 1553. Thus it is Reese's burden to come forward with affirmative evidence of a lack of prejudice. T-Mobile may remain

"utterly mute on the issue of prejudice and nonetheless prevail[]." *Hall*, 93 F.3d at 1554.

### 1. *Evidentiary prejudice*

Reese has provided no affirmative evidence that T-Mobile will not suffer evidentiary prejudice from his eight-year delay. In contrast, T-Mobile argues that they will suffer evidentiary prejudice because Reese is unable to account for evidence relevant to T-Mobile's defense of this action. Reese does not dispute that he no longer has a complete of set documents produced in or generated during the course of his prior litigation relating to '150 Patent. (SUF ¶ 58–60; Mot. Exs. 20–21.) To date, Reese has been unable to produce all the documents that existed for the *US West*, *Northern Telecom*, *Aastra*, *Samsung*, or *Verizon California* cases. Additionally, Reese does not dispute that he no longer has a complete set of licensing agreements for the '150 or related patents. (SUF ¶¶ 48–49; Mot. Exs. 17–18.) Reese's prior counsel also admitted to destroying 68 folders of documents related to Reese's prior litigation— some of which directly involved the '150 Patent. (SUF ¶ 59; Wong Decl. ¶ 23, Ex. 21.) Although the contents of the documents are unknown, a chart provided by prior counsel shows a variety of potentially responsive documents including "current settlements" and "Reese/T-Mobile Issue." (Mot. Ex. 21–22.)

The loss of these documents is problematic for two major reasons. First, because the licenses—many of which were given to cell-phone-handset manufacturers—may protect T-Mobile from Reese's infringement allegations. If Reese licensed customers to use handsets that subscribe to T-Mobile's services or network, that license may protect T-Mobile from infringement claims. Second, those licenses are essential to allow T-Mobile to propose a reasonable-royalty rate for any potential damages involving unlicensed products. In the absence of this evidence, T-Mobile's opportunity to defend itself against Reese's infringement claim is somewhat less than "full and fair."

/ / /

1  Reese attempts to argue that T-Mobile should endeavor to reconstruct the

2  evidence for its defense, which he alleges should still be available from some other

3  sources.  But Reese presents no authority for his novel proposition that T-Mobile is

4  required to attempt to gather whatever evidence remains and hope that it works for

5  their defense.  This burden lies with Reese, not T-Mobile.  Consequently, Reese has

6  not met his burden to come forward with affirmative evidence of a lack of evidentiary

7  prejudice.

8         2.  *Economic prejudice*

9  Reese also argues that T-Mobile has failed to prove that it has been

10  economically prejudiced by Reese's delay in filing.  But again, it is not T-Mobile's

11  burden, as Reese argues, to demonstrate economic prejudice in light of the laches

12  presumption.  Rather, Reese has the burden of proving that T-Mobile has not been

13  economically prejudiced by Reese's delay—which he does not attempt to do in his

14  Opposition.  Reese merely attacks T-Mobile's assertions of economic prejudice as

15  "largely conclusory and lack[ing] any proof."  (Opp'n 15.)  This is insufficient.

16  Accordingly, Reese has failed to adduce any affirmative evidence that T-Mobile has

17  not been economically prejudiced by Reese's eight-year delay in filing suit.

18  / / /

19  / / /

20  / / /

21  / / /

22  / / /

23  / / /

24  / / /

25  / / /

26  / / /

27  / / /

28  / / /

## V.    CONCLUSION

Based on the undisputed facts, T-Mobile is entitled to the presumption of laches.  Reese has failed to prove that his delay was reasonable, or that T-Mobile suffered no prejudice as a result of the delay.  Accordingly, for the reasons discussed above, T-Mobile's Motion for Summary Judgment is **GRANTED**.  (ECF No. 21.)  A Judgment will issue.  The parties are directed to file a joint status report detailing what issues, if any, remain for this Court to resolve.

**IT IS SO ORDERED.**

May 9, 2014

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**

**O**

1
2
3
4
5
6
7
8

# United States District Court
# Central District of California

9
10

11    MORRIS REESE,                                    Case No. 2:13-cv-03811-ODW(PLAx)

12                        Plaintiff,

13            v.                                        **ORDER DENYING PLAINTIFF'S**

14    SPRINT NEXTEL CORP.,                              **MOTION FOR**

15                        Defendant.                    **RECONSIDERATION [81]**

16                      **I.    INTRODUCTION**

17         Plaintiff Morris Reese moves for reconsideration of the Court's Order granting

18    Defendant's respective motions for summary judgment on the defense of laches.

19    Reese asserts that the Supreme Court's recent decision in *Petrella v. Metro-Goldwin-*

20    *Mayer, Inc.,* 134 S. Ct. 1962 (2014), materially changes the controlling law of laches

21    set forth by the Federal Circuit in *A.C. Aukerman Co. v. R.L. Chaides Construction*

22    *Co.*, 960 F.2d 1020 (Fed. Cir. 1992) (en banc), and directly impacts the Court's

23    summary-judgment Order.  For the reasons discussed below, the Court **GRANTS**

24    Reese's Motion for Reconsideration,[1]  (ECF No. 84) and having done so, reaffirms its

25    original decision.

26    / / /

27    _____

28    [1]  After carefully considering the papers filed with respect to Reese's Amended Motion for
      Reconsideration, the Court deems the matter appropriate for decision without oral argument.  Fed. R.
      Civ. P. 78; L.R. 7-15.

/ / /

## II.   FACTUAL BACKGROUND

On March 17, 2014, Defendants filed individual motions for summary judgment.   All Defendants asserted laches as an equitable defense to Reese's infringement allegations.   (*Id.*)   On May 9, 2014, the Court granted summary judgment on Defendants' laches defense.  (ECF No. 76.)  The Court found that the Defendants were entitled to a presumption of laches—due to Reese's over six-year delay in bringing suit—which Reese failed to rebut.   (*Id.*)   On May 19, 2014, the United States Supreme Court decided *Petrella v. Metro-Goldwin-Mayer, Inc.,* 134 S. Ct. 1962 (2014).  On June 2, 2014, Reese filed this Motion for Reconsideration.  (ECF No. 81), which he amended on June 9, 2014.  (ECF No. 84.)

## III.   LEGAL STANDARD

Federal Rule of Civil Procedure 60(b) permits a court to relieve a party of an order for, among other reasons, "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6).  Under Ninth Circuit case law, a party may only seek relief under this catchall provision when the party demonstrates "extraordinary circumstances" warranting the court's favorable exercise of discretion.  *Cmty. Dental Servs. v. Tani*, 282 F.3d 1164, 1168 (9th Cir. 2002).  To satisfy its burden under this lofty standard, a party must prove both (1) an injury and (2) circumstances beyond its control.  *Id.*

The Local Rules further elucidate the proper bases for which a party may seek reconsideration:

> (a) a material difference in fact or law from that presented to the Court
> before such decision that in the exercise of reasonable diligence could not
> have been known to the party moving for reconsideration at the time of
> such decision, or (b) the emergence of new material facts or a change of
> law occurring after the time of such decision, or (c) a manifest showing

1    of a failure to consider material facts presented to the Court before such

2    decision.

3    L.R. 7-18.  Additionally, "[n]o motion for reconsideration shall in any manner repeat

4    any oral or written argument made in support of or in opposition to the

5    original motion."  *Id.*

6                              **IV.    DISCUSSION**

7        Reese asserts that the Court should reconsider its May 9, 2014 Orders granting

8    Defendants' motions for summary judgment because *Petrella* constitutes a material

9    change in the law that affects the Court's summary-judgment Orders.  Reese contends

10   that the Supreme Court's decision in *Petrella* requires that Reese be allowed to go

11   forward with his infringement claims because *Petrella* prohibits Courts from allowing

12   a finding of laches to shorten a congressionally defined limitations period.

13       Defendants assert that there is no basis for reconsiderations because *Petrella*

14   pertained only to the Copyright Act, and the Supreme Court explicitly declined to

15   opine on the patent-specific laches doctrine.

16       In *Petrella*, the Supreme Court established that the equitable defense of laches

17   cannot be used to defeat a claim filed within the Copyright Act's three-year statute of

18   limitations.  *Id.* at 1973–74.  The Supreme Court held that if the infringement occurred

19   within the limitations period, "courts are not at liberty to jettison Congress' judgment

20   on the timeliness of suit."  *Petrella*, 134 S. Ct. at 1967.  The Supreme Court deferred

21   to Congress's time provisions, eschewing the application of laches in a manner that

22   would further limit the timeliness of suit.  *Id.* at 1974 ("[I]n face of a statute of

23   limitations enacted by Congress, laches cannot be invoked to bar legal relief . . . .")

24   Rather, the Court stated that laches is a "gap-filling, not legislation-overriding,"

25   measure that is appropriate only when there is not an explicit statute of limitations.  *Id.*

26   at 14.

27       Although the decision in Petrella was confined to laches in the copyright

28   context, the Supreme Court did comment on the applicability of laches to patent law,

The Patent Act states: "[N]o recovery shall be had for any infringement committed more than six years prior to the filing of the complaint." 35 U.S.C. § 286. The Act also provides that "[n]oninfringement, absence of liability for infringement or unenforceability" may be raised "in any action involving the validity or infringement of a patent." § 282(b) Based in part on § 282 and commentary thereon, legislative history, and historical practice, the Federal Circuit has held that laches can bar damages incurred prior to the commencement of suit, but not injunctive relief. *A.C. Aukerman Co. v. R.L. Chaides Constr. Co.,* 960 F.2d 1020, 1029–1031, 1039–1041 (1992) (en banc). We have not had occasion to review the Federal Circuit's position.

*Id.* at 1974 n.15.

Thus, the Supreme left *Auckerman* standing as controlling law on laches in the patent context. In *Aukerman*, the Federal Circuit dealt with the application of laches in the patent context—and the doctrine's interplay with the damages limitation provided in § 286. *Aukerman*, 960 F.2d at 1032. The defendant in *Aukerman* argued that the statutorily provided statute of limitations precluded the application of a laches defense. *Id.* The Federal Circuit noted that the six-year limitation period "is not a statute of limitations in the sense of barring a suit for infringement." *Id.* at 1030. Indeed, the Federal Circuit noted that for a brief time, the Patent Act contained a true statute of limitations that required that "all actions for the infringement of patents shall be brought . . . within six years . . . ." *Id.* at 1020 n.8. In contrast, the modern § 286 provision functions as a damages limitation. *See Aukerman*, 960 F.2d 1020–21. The Federal Circuit found that the laches doctrine was fully compatible with § 286, because although it provided a discretionary power to limit *prefiling* damages, it did not affect the enforceability of the patent generally. *Id.* at 1030–31.

To the extent that Reese argues that *Petrella* implicitly overrules *Aukerman*, the Court disagrees. *Petrella* does call into question whether a laches finding can bar

monetary relief for patent infringement committed within the six-year limitation period provided under § 286.  Copyright law and patent law have numerous parallels, and there is a robust history of the Supreme Court borrowing principles from one body of law to support decisions in the other—including laches.  *See Aukerman*, 960 F.2d at 1033 (citing *Bott v. Four Star Corp.*, 807 F.2d 1567, 1576 (Fed. Cir. 1986) (overruled on other grounds)).

Moreover, some of the concerns noted by the Supreme Court in *Petrella* apply with equal force to patent-infringement actions.  First, the same separation-of-powers conflict is present.  Like the Copyright Act, the Patent Act provides a congressionally codified statute of limitations.  *See* 35 U.S.C. § 286.  The application of the judicially created laches doctrine to infringement claims brought within the prescribed limitations period necessarily creates tension between the two branches.  *See Petrella* 134 S. Ct. at 1973–74.  Second, there are arguably greater concerns regarding the adverse effects of inconsistent laches applications in the patent context.  See *id.* at 1975 ("Inviting individual judges to set a time limit other than the one Congress prescribed . . . would tug against the uniformity Congress sought to achieve . . . .").

But there are also significant differences between the two bodies of law that call in to question the applicability of *Patrella* to patent law.  First, the Patent Act's time limitation on damages is not a perfect analog for the Copyright Act's statute of limitations.  The Copyright Act provides an absolute three-year limitations period for all civil actions.  17 U.S.C. § 507.  In contrast, the Patent Act does not contain an absolute statute of limitations—it provides a time limitation on damages recovery: "no recovery shall be had for any infringement committed more than six years prior to the filing of the complaint . . . for infringement."  35 U.S.C. § 286.

Additionally, § 286 has a different time line, statutory structure, and legislative history than the corresponding copyright limitations period.  Indeed, the Federal Circuit explored this divergent history in *Aukerman* and determined that Congress

intended laches to complement—rather than be supplanted by—§ 286's damages limitation. *See Aukerman*, 960 F.2d 1030–31.

///

Because the Supreme Court left *Aukerman* standing as controlling law on laches in the patent context, and significant differences exist between copyright and patent law, the Court cannot find that *Petrella* explicitly or implicitly mandates a departure from the Court's May 9, 2014 decisions.

## V.    CONCLUSION

For the reasons discussed above, the Court **GRANTS** Reese's Amended Motion for Reconsideration.    (ECF No. 84.)    Reese's original Motion for Reconsideration (ECF No. 81), is **DENIED AS MOOT**.    Having reconsidered Reese's Motion in light of the *Patrella* the court reaffirms its original decision granting Defendant's respective motions for summary judgment on the defense of laches.

**IT IS SO ORDERED.**


July 24, 2014

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**

1  BROWN WHITE & NEWHOUSE LLP
   GEORGE B. NEWHOUSE, JR (SBN 107036)
2  HENRY WHITEHEAD (SBN 284676)
   333 South Hope Street, 40th Floor
3  Los Angeles, California 90071-1406
   Telephone:  213. 613.0500
4  Facsimile:  213.613.0550

5  Attorneys for Defendants
   Sprint Nextel Corp. and Verizon Wireless Servs. LLC

6

7                  **UNITED STATES DISTRICT COURT**          JS-6

8                  **CENTRAL DISTRICT OF CALIFORNIA**

9                  **WESTERN DIVISION – LOS ANGELES**

10

11                                    Case No. 2:13-cv-3811-ODW(PLAx)-*

12  MORRIS REESE,                     **JUDGMENT**

13              Plaintiff,            **ALL CASES**

14       v.

15  SPRINT NEXTEL CORP.,

16              Defendant.            Case No. 2:13-cv-5196-ODW(PLAx)

17  MORRIS REESE,

18              Plaintiff and Counter-
                defendant,
19
    v.
20
    TRACFONE WIRELESS, INC.,
21
                Defendant and
22              Counterclaimant.

23

24

25

26

27

28

                                     1
[PROPOSED] JUDGMENT

|  |  |
|---|---|
| MORRIS REESE,<br><br>        Plaintiff and Counter-<br>        defendant,<br><br>v.<br><br>VERIZON WIRELESS SERVS. LLC,<br><br>        Defendant and<br>        Counter-claimant. | Case No. 2:13-cv-5197-ODW(PLAx) |
| MORRIS REESE,<br><br>        Plaintiff and Counter-<br>        defendant,<br><br>v.<br><br>AT&T MOBILITY II LLC,<br><br>        Defendant and<br>        Counter-claimant. | Case No. 2:13-cv-5198-ODW(PLAx) |
| MORRIS REESE,<br><br>        Plaintiff,<br><br>v.<br><br>T-MOBILE USA,<br><br>        Defendant. | Case No. 2:13-cv-5199-ODW(PLAx) |

In light of the Court's orders granting the respective defendant's motions for summary judgment in *Reese v. Sprint Nextel Corp.*, Case No. 2:13-cv-3811-ODW(PLAx) (C.D. Cal. May 9, 2014) (ECF No. 76), *Reese v. TracFone Wireless, Inc.*, Case No. 2:13-cv-5196-ODW(PLAx) (C.D. Cal. May 9, 2014) (ECF No. 38), *Reese v. Verizon Wireless Servs. LLC*, Case No. 2:13-cv-5197-ODW(PLAx) (C.D. Cal. May 9, 2014) (ECF No. 42), *Reese v. AT&T Mobility II LLC*, Case No. 2:13-cv-5198-ODW(PLAx) (C.D. Cal. May 9, 2014) (ECF No. 36), and *Reese v. T-Mobile USA*, Case No. 2:13-cv-5199-ODW(PLAx) (C.D. Cal. May 9, 2014) (ECF No. 40), and considering the Parties' representations in their May 30, 2014 Joint

[PROPOSED] JUDGMENT

1666807.1

Status Report, *Reese v. Sprint Nextel Corp.*, Case No. 2:13-cv-3811-ODW(PLAx) (C.D. Cal.)

**IT IS HEREBY ORDERED:**

1.   Plaintiff Morris Reese shall take nothing;

2.   Judgment for each of the Defendants in each of the following related cases:

    a.   Sprint Nextel Corp. (2:13-cv-3811-ODW(PLAx));

    b.   TracFone Wireless, Inc. (2:13-cv-5196-ODW(PLAx));

    c.   Verizon Wireless Services LLC (2:13-cv-5197-ODW(PLAx));

    d.   AT&T Mobility II LLC (2:13-cv-5198-ODW(PLAx)); and

    e.   T-Mobile USA (2:13-cv-5199-ODW(PLAx)).

3.   Defendants' counterclaims are dismissed without prejudice.

4.   The Clerk of Court shall close this case.

**IT IS SO ORDERED**

Dated:   September 23, 2014

                         Honorable Otis D. Wright II
                         United States District Judge

A000832

1660307.1

[PROPOSED] JUDGMENT

(12) **United States Patent**                    (10) **Patent No.:**        **US 6,868,150 B1**

Reese                                            (45) **Date of Patent:**       *Mar. 15, 2005

---

(54) **METHOD FOR USE WITH CALLER ID SYSTEM**

(76) Inventor: **Morris Reese**, P.O. Box 6651, Thousand Oaks, CA (US) 91359

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 215 days.

This patent is subject to a terminal disclaimer.

(21) Appl. No.: **10/160,769**

(22) Filed: **Jun. 3, 2002**

**Related U.S. Application Data**

(63) Continuation of application No. 08/614,188, filed on Mar. 13, 1996, now Pat. No. 6,427,009, which is a continuation of application No. 08/093,603, filed on Jul. 19, 1993, now abandoned, which is a continuation of application No. 07/691,492, filed on Apr. 25, 1991, now abandoned, which is a continuation-in-part of application No. 07/460,381, filed on Jan. 3, 1990, now abandoned.

(51) **Int. Cl.⁷** ......................... **H04M 3/42**; H04M 1/56; H04M 15/06

(52) **U.S. Cl.** ........................... **379/215.01**; 379/142.08; 379/201.11; 379/207.04

(58) **Field of Search** ...................... 379/215.01, 142.01, 379/142.04, 142.05, 142.06, 142.08, 201.01, 201.11, 201.02, 201.12, 207.02, 207.04, 207.05, 207.06, 207.07, 210.02, 210.03, 211.01, 211.02

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,277,649 A | * | 7/1981 | Sheinbein | 379/211.02 |
| 4,332,985 A | | 6/1982 | Samuel | 379/353 |
| 4,447,676 A | | 5/1984 | Harris et al. | 379/199 |

(List continued on next page.)

FOREIGN PATENT DOCUMENTS

| | | |
|---|---|---|
| JP | 0039154 | 3/1983 |
| JP | 56-13665 | 7/1983 |
| JP | 0059854 | 4/1985 |

(List continued on next page.)

OTHER PUBLICATIONS

Bellcore Technical Reference TR–TSY–000031, Issue 1, Jun. 1986, "Calling Number Delivery".

Bellcore Technical Advisory TA–NWT–000030, Issue 2, Sep. 1991, "CPE Data Transmitter Requirements".

(List continued on next page.)

*Primary Examiner*—Benny Q. Tieu

(57)                 **ABSTRACT**

An apparatus and method are disclosed for accessing telephone or cellular originating central office equipment to control the disclosure of a calling party directory telephone number or, if applicable or available, directory telephone number and name to a called party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID), which discloses the calling party directory telephone number or directory telephone number and name to the called party, by performing a desired one of a plurality of automatic and/or manual operations. Method is disclosed for connecting to a called station idle or busy telephone line with ringing signals or a call-waiting tone signal and then transmitting the calling party directory telephone number or, if applicable or available, directory telephone number and name to the called station during a silent interval between the ringing signals or after the call-waiting tone signal responsively to receiving the calling party directory telephone number flagged as public from originating central office equipment of the calling party indicating that the directory telephone number or the directory telephone number and name are to be disclosed at the called station.

**49 Claims, 4 Drawing Sheets**



## US 6,868,150 B1

### U.S. PATENT DOCUMENTS

| | | | | |
|---|---|---|---|---|
| 4,551,581 | A | | 11/1985 | Doughty ...................... 379/94 |
| 4,567,323 | A | | 1/1986 | Lottes et al. ............... 379/207 |
| 4,582,956 | A | | 4/1986 | Doughty ...................... 379/94 |
| 4,661,975 | A | * | 4/1987 | Brecher ............. 379/215.01 |
| 4,723,273 | A | | 2/1988 | Diesel et al. .............. 379/211 |
| 4,759,056 | A | | 7/1988 | Akiyama ................... 379/197 |
| 4,788,720 | A | | 11/1988 | Brennan et al. .......... 379/201 |
| 4,873,719 | A | | 10/1989 | Reese ........................ 379/201 |
| 4,894,861 | A | | 1/1990 | Fujioka ...................... 379/374 |
| 4,922,490 | A | | 5/1990 | Blakley ................ 379/142 X |
| 4,924,496 | A | | 5/1990 | Figa et al. ................. 379/142 |
| 5,033,076 | A | | 7/1991 | Jones et al. ................. 379/67 |
| 5,054,052 | A | | 10/1991 | Nonami ...................... 379/57 |
| 5,067,153 | A | | 11/1991 | Willie et al. ........... 379/142 X |
| 5,121,423 | A | | 6/1992 | Morihiro et al. .......... 379/142 |
| 5,155,761 | A | | 10/1992 | Hammond .................. 379/67 |
| 5,189,634 | A | | 2/1993 | Eberle et al. ......... 364/724.09 |
| 5,228,080 | A | | 7/1993 | Nutter et al. .............. 379/373 |
| 5,265,145 | A | | 11/1993 | Lim ............................ 379/88 |

### FOREIGN PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| JP | 0070648 | 3/1988 | |
| JP | 61-213955 | 3/1988 | |
| JP | 0089846 | 4/1989 | ................ 379/142 |
| JP | 0099356 | 4/1989 | |
| JP | 63-77186 | 4/1989 | |
| JP | 63-76101 | 6/1989 | |
| JP | 0248747 | 10/1989 | |
| JP | 0251848 | 10/1989 | |
| JP | 1253389 | 10/1989 | ................ 379/215 |
| JP | 2256358 | 10/1990 | ................ 379/215 |

### OTHER PUBLICATIONS

Bellcore Technical Reference TR–TSY–000030, Issued Nov. 1986, "SPCS Customer Premises Equipment Interface".

Bellcore Technical Reference TR–TSY–000391, Issued Jun. 1988, "Calling Number Delivery Blocking".

* cited by examiner



CALLING PARTY PROGRAMS APPARATUS FOR AUTOMATIC AND/OR MANUAL CALLING OPERATION
101
CALLING PARTY CAUSES APPARATUS TO GO INTO OFF-HOOK MODE
102
IS DIAL TONE DETECTED ?
103
NO
LINE TO CENTRAL OFFICE EQUIPMENT DISCONNECTED
104
YES
IS BLOCK BUTTON ACTIVATED ?
105
NO
IS DISPLAY BUTTON ACTIVATED ?
106
NO
CONVENTIONAL AUTOMATIC OR MANUAL DIALING PREVAILS
107
YES
YES
AUTODIAL PRESTORED ACCESS CODE
108
IS DIGIT FOR PRESTORED PHONE NUMBER ACTIVATED ?
109
NO
CALLING PARTY MANUALLY DIALS OR PRESSES DIGIT TO AUTOMATIC DIAL PRESTORED PHONE NUMBER
110
YES
AUTODIAL PRESTORED PHONE NUMBER
111
LINE TO TERMINATING OFFICE EQUIPMENT
ORIGINATING OFFICE EQUIPMENT FLAGS CALLING PARTY DN AS "PUBLIC" OR "PRIVATE" AND TRANSMITS TO TERMINATING OFFICE EQUIPMENT
112

FIG. 1



*FIG. 2*

201 — TERMINATING CENTRAL OFFICE EQUIPMENT RECEIVES FLAGGED "PUBLIC" DN FROM ORIGINATING CENTRAL OFFICE EQUIPMENT

202 — CONNECT TO CALLED IDLE OR BUSY TELEPHONE LINE AND SEND RINGING OR CALL-WAITING TONE SIGNAL PLUS DN TO CALLED STATION

203 — RECEIVE AND DECODE DN

204 — GENERATE AND ASSIGN NUMERIC DIGIT TO DN

205 — DISPLAY DN IN DISPLAY COUNTER

206 — STORE DN TO MEMORY



*FIG. 2A*

207 — TERMINATING CENTRAL OFFICE EQUIPMENT RECEIVES FLAGGED "PRIVATE" DN FROM ORIGINATING CENTRAL OFFICE EQUIPMENT

208 — CONNECT TO CALLED IDLE OR BUSY TELEPHONE LINE AND SEND RINGING OR CALL-WAITING TONE SIGNAL ONLY

*FIG. 2B*



USER PRESSES RECALL BUTTON ON APPARATUS WHILE IN ON-HOOK MODE TO RECALL STORED DN FROM MEMORY FOR DISPLAY IN DISPLAY COUNTER — 209

USER CAUSES APPARATUS TO GO INTO OFF-HOOK MODE — 210

USER THEN PRESSES DIGIT ON KEYPAD ON APPARATUS CORRESPONDING TO NUMERIC DIGIT ASSIGNED TO STORED DN — 211

AUTO DIALER UNIT AUTOMATICALLY DIALS STORED DN — 212



**FIG. 3**

US 6,868,150 B1

<table>
<tr><td>1</td><td>2</td></tr>
</table>

# METHOD FOR USE WITH CALLER ID SYSTEM

This is a continuation under 37 CFR 1.53 (b) (1) of pending prior art application Ser. No. 08/614,188, filed on March 13, 1996 now U.S. Pat. No. 6,427,004 of MORRIS REESE, which is a continuation of application Ser. No. 08/093,603, filed Jul. 19, 1993 (abandoned), which is a continuation of application Ser. No. 07/691,492, filed on Apr. 25, 1991 (abandoned), which is a continuation-in-part of application Ser. No. 07/460,381, filed on Jan. 3, 1990 (abandoned).

## BACKGROUND OF THE INVENTION

### 1. Field of the Invention

This invention relates to an apparatus, such as a pushbutton telephone or other receiving and sending equipment, for use in accessing telephone or cellular company originating central office equipment so as to allow a calling party to control the disclosure of its directory telephone number and/or name (hereinafter sometimes referred to as "directory telephone number with a corresponding name" or "DN") to a called party who subscribes to any of the Custom Local Area Signaling System (CLASS) services such as Caller ID, Automatic Recall, Who Called Me, Automatic Callback and Screening List, to name a few. The apparatus is also for use in receiving a directory telephone number and/or name of a calling third party from telephone or cellular company terminating central office equipment, displaying the received directory telephone number and/or name in a display counter, and storing the received directory telephone number and/or name in memory for later recall by the called party. In addition, the apparatus is for use in permitting the automatic or manual dialing of the stored directory telephone number to return a call. This invention also relates to a method for sending a directory telephone number and/or name of a calling party to a called station during a silent interval between ringing signals or following a call waiting tone signal after receiving at terminating central office equipment serving the called station the calling party's directory telephone number flagged as public from originating central office equipment serving the calling party, indicating that the received directory telephone number or, if applicable, directory telephone number and name of the calling party is to be disclosed at the called station.

### 2. Description of the Prior Art

Several Regional Bell Operating Companies are offering or planning to offer their customers Caller ID on a subscription basis. This new service discloses the calling party directory telephone number to the called party during the first long interval between ringing signals from a telephone switching office. Due to privacy considerations, most state public utility commissions are requiring their local telephone companies to offer Caller ID along with a blocking service, and for free, so as to allow the calling party to decide on a per call basis whether to disclose or block its directory telephone number to the called party. One blocking service being offered or considered by the Regional Bell Operating Companies require the calling party to dial an access code prior to and as part of the calling sequence in order to override the calling party permanent "public" status of its directory telephone number and temporarily flag the directory telephone number as "private" to indicate to the terminating central office equipment that the directory telephone number is not to be disclosed to the called party. If the access code is dialed as part of the calling sequence, the directory telephone number will be disclosed to the called party. In either case, the originating central office equipment transmits the flagged "public" or "private" directory telephone number to the terminating central office equipment to which the called party telephone line is connected during call setup. If the directory telephone number is flagged "private", the terminating central office equipment connects to the called party telephone line with ringing only. However, if the directory telephone number is flagged "public", the terminating central office equipment connects to the called party telephone line with ringing and the transmission of the calling party's directory telephone number.

The invention disclosed in the Carolyn A. Doughty U.S. Pat. No. 4,582,956, issued Apr. 15, 1986, discloses a method and an apparatus for displaying at a selected station special service information during a silent interval between ringing signals from a telephone switching office. Each received character of the special service information is "temporarily stored" in a data memory of a data receiver by a program-controlled microprocessor and then exhibited in a display unit under the control of the microprocessor. The display is thus initiated during the silent interval and remains until cleared, automatically, when the called party answers the incoming call or when the calling party hangs up. Thus, in either situation, the special service information is retained in memory at the terminating central office switch and not in a memory at the called party apparatus.

## SUMMARY OF THE INVENTION

The foregoing problems are solved and a technical advance is achieved by method and apparatus for accessing telephone or cellular company originating central office equipment so as to control the disclosure of a calling party's DN to a called party who subscribes to Caller ID or to any of the previously mentioned CLASS services by performing different automatic calling operations. Another technical advance is achieved by method and apparatus for receiving, displaying and storing to memory a calling party's DN sent from telephone or cellular company terminating central office equipment responsively to the calling party's flagged "public" DN received to the terminating central office equipment from originating central office equipment to which the calling party telephone line is connected. A receiver-decoder connected to a called party apparatus (telephone set or separate stand alone unit) receives and decodes signals representing the calling party's DN sent from the terminating central office equipment. A number generator connected to the apparatus generates and assigns a numeric digit(s) to each DN received to the receiver-decoder. An alphanumeric display unit connected to the apparatus displays the received DN in an LED or LCD display counter. A memory unit of the apparatus stores the received DN and the generated digit(s) to memory for later recall and display. Method and apparatus for recalling a stored DN from memory for visual display in a display counter, and for automatically or manually dialing the stored DN to return a missed call achieve still another technical advance. For example, assuming that the called party missed the incoming call and decides to return the missed call, the called party presses a recall button on the apparatus to recall the stored DN from memory for display in the LED or LCD display counter. The called party then causes the apparatus to go into an off-hook mode so as to receive dial tone from central office equipment and then presses the digit(s) assigned to the stored DN on a keypad on the apparatus, thus an autodialer unit connected to the apparatus automatically dials the stored DN.

Still yet another technical advance is achieved by method for sending to a called station during a silent interval of a

3

ringing signal cycle or a call-waiting tone signal cycle a calling party's DN from terminating central office equipment responsively to the receipt of the DN from originating central office equipment indicating that the DN is to be disclosed at the called station. For example, the terminating central office equipment responds to the receipt of the calling party's "public" DN from the originating central office equipment by connecting to a voice channel of the called party busy or idle telephone line with a ringing signal or a call-waiting tone signal and then sending the DN to an apparatus at the called station during a silent interval of the ringing signal cycle or the call-waiting tone signal cycle.

In accordance with the teaching of this invention I provide a calling party with a programmable apparatus and methods of accessing telephone or cellular company originating central office equipment so as to control the disclosure of the calling party DN to a called party who subscribes to Caller ID or to any of the other CLASS services by performing different automatic calling operations. I also provide the called party with the programmable apparatus for use in receiving, displaying and storing to memory the calling party's DN sent from telephone or cellular company terminating central office equipment.

In one operation of this invention, i.e. in FIG. 1, the calling party programs the apparatus prior to going off-hook to perform a desired automatic calling operation by pressing either a display button or a block button on the apparatus, in addition to pressing a desired digit on the apparatus keypad corresponding to a stored phone number of a person to be contacted. The desired automatic calling operation begins when the calling party causes the apparatus to go into an off-hook mode. The telephone or cellular company originating central office equipment to which the calling party telephone line is connected detects the off-hook condition on the telephone line and sends dial tone. A dial tone detector of the apparatus detects the dial tone while a microprocessor of the apparatus, which is responsive to the detection of the dial tone, determines whether the display button or the block button has been activated. If neither the display button nor the block button has been activated, conventional automatic or manual dialing of the stored phone number or any other phone number prevails. Assuming that the display button and the digit corresponding to the stored phone number of the person to be contacted have, indeed, been activated, an autodialer with memory unit of the apparatus automatically dials the stored phone number. The originating central office equipment responds to the autodialed phone number by temporarily flagging the calling party permanent stored DN as "public" and automatically transmitting the flagged "public" DN to the terminating central office equipment to which the called party telephone line is connected. The terminating central office equipment responds to the receipt of the flagged "public" DN from the originating central office equipment by connecting to the called party busy or idle telephone line with ringing signals or a call-waiting tone signal and transmitting the DN to the called party apparatus during a silent interval between the ringing signals or following the call-waiting tone signal. The apparatus receives the DN, generates and assigns a numeric digit to the received DN, displays the received DN in an LED or LCD display counter and stores the received DN to memory so as to allow the called party to later recall the stored DN from the memory for display and automatic or manual dialing of the stored DN to return a missed call.

In another operation of this invention, if it is determined that the block button has been activated, the autodialer with memory unit of the apparatus automatically dials a prestored

4

access code. The access code instructs the originating central office equipment, to which the calling party is connected, to temporarily flag the calling party permanent stored DN as "private". In continuation, the microprocessor of the apparatus immediately makes a decision to determine whether the digit corresponding to the stored phone number of the person to be contacted has been activated. Assuming that the digit has been activated, the autodialer with memory unit, which is now in a pause mode, automatically dials the stored phone number. The originating central office equipment responds to the receipt of the autodialed phone number by temporarily flagging the calling party permanent stored DN as "private" and automatically transmitting the flagged "private" DN to the terminating central office equipment to which the called party telephone line is connected. The terminating central office equipment responds to the receipt of the flagged "private" DN from the originating central office equipment by connecting to the called party idle telephone line and transmitting ringing signals only, or by connecting to the called party busy telephone line and transmitting a call-waiting tone signal only.

In still another operation of this invention, if it is determined that neither the display button nor the block button has been activated, conventional automatic or manual dialing of any access code and/or phone number prevails.

In still yet another operation of this invention, if it is determined that the display button has been activated and the digit corresponding to the stored phone number of the person to be contacted has not been activated, the calling party automatically or manually dials the stored phone number or any other desired phone number of the person to be contacted.

BRIEF DESCRIPTION OF THE DRAWINGS

The invention may be better understood from the following description when read together with the drawing, in which:

FIG. 1 shows, in flow chart form, method and apparatus for accessing originating central office equipment to control the disclosure of a calling party's DN to a called party who subscribes to Caller ID service or to any other CLASS service by performing different automatic or manual calling operations;

FIG. 2 shows, in flow chart form, method for sending via a voice channel of a busy or an idle telephone line to an apparatus at a called station a DN of a calling party from terminating central office equipment, and the apparatus receiving the DN, generating and assigning a numeric digit to the received DN, displaying the received DN in a display counter and storing the received DN to memory;

FIG. 2A shows, in flow chart form, method for sending via a voice channel of a busy or an idle telephone line to a called station ringing signals only or a call-waiting tone signal only from terminating central office equipment responsively to receiving a flagged "private" DN from originating central office equipment;

FIG. 2B shows, in flow chart form, method for automatically dialing a stored DN of a previous caller previously sent from terminating central office equipment responsively to the receipt of the DN flagged as public from originating central office equipment; and

FIG. 3 shows a simplified diagram of the principal components of an apparatus (telephone set or other receiving and sending devices) connected via telephone lines and a RJ11 jack to originating or terminating central office equipment for performing the various operations of the inventions.

5

## DESCRIPTION OF THE PREFERRED EMBODIMENT (S)

A first operation of the invention is illustrated in the flow chart of FIG. **1**, which shows a calling party (step **101**) programming its apparatus while in an on-hook mode to perform a desired automatic and/or manual calling operation by pressing either the block button or the display button on the apparatus plus a digit on the apparatus keypad corresponding to a prestored phone number of the person or entity to be contacted. The calling party (step **102**) then causes the apparatus to go into an off-hook mode by either pressing a predetermined button on the apparatus or by lifting the handset on the apparatus. The originating central office equipment, prior art, responds to the off-hook condition on the calling party telephone line by sending dial tone. The dial tone detector (step **103**), which is connected to the apparatus, detects the dial tone and signals the microprocessor (steps **105** and **106**) which, in turn, determines whether the block button or the display button has been activated by the calling party (step **101**). However, if the dial tone is not detected by the dial tone detector (step **103**), it is presumed that the calling party apparatus is not connected via telephone lines to the originating central office equipment.

Assuming that the microprocessor (steps **105** and **106**) determines that the block button has, indeed, been activated, the autodialer with memory unit (step **108**), which is connected to the apparatus, automatically dials a prestored access code which instructs the originating central office equipment to temporarily flag the calling party permanent stored "public" DN as "private". The microprocessor (step **109**) makes another decision, while the autodialer with memory unit (step **108**) is in a pause mode, to determine whether the digit corresponding to the prestored phone number of the person or entity to be contacted has been activated. If it is determined that the digit has been activated, the autodialer with memory unit (step **111**) is signaled to start dialing the prestored phone number. The originating central office equipment (step **112**), prior art, responds to the receipt of the autodialed phone number by flagging the calling party permanent stored "public" DN as "private" and transmitting the flagged "private" DN to the terminating central office equipment to which the called party telephone line is connected.

Referring now back to the microprocessor (steps **106** and **109**), if it is determined that the display button and the digit corresponding to the prestored phone number have been activated, step **111** is the same as previously described. The originating central office equipment (step **112**), prior art, responds to the receipt of the autodialed phone number by flagging the calling party permanent stored DN as "public" and transmitting the flagged "public" DN to the terminating central office equipment to which the called party telephone line is connected.

Referring now back to the microprocessor (steps **105** and **106**), if it is determined that neither the block button nor the display button has been activated, the calling party (step **107**) is permitted to conventionally dial, either automatically and/or manually, any access code and/or phone number of choice.

Referring now back to the microprocessor (steps **105**, **106** and **109**), if it is determined that the display button has been activated but the digit corresponding to the prestored phone number has not been activated, the calling party (step **110**) is permitted to conventionally dial, either automatically or manually, the prestored phone number or any other phone number of choice.

6

In FIG. **2**, the terminating central office equipment (step **201**) to which a called party telephone line is connected receives a calling party flagged "public" DN from originating central office equipment to which the calling party telephone line is connected.

The terminating central office equipment (step **202**) responds to the receipt of a calling party flagged "public" DN from originating central office equipment to which the calling party telephone line is connected by connecting to a voice channel of a called party busy telephone line with a call-waiting tone signal and sending the calling party DN to an apparatus at the called station during a silent interval after the call-waiting tone signal, or by connecting to a voice channel of a called party idle telephone line with ringing signals and sending the calling party DN to an apparatus at the called station during a silent interval between the ringing signals.

A receiver-decoder (step **203**), connected to the called party apparatus (telephone set or separate stand alone unit), receives and decodes signals representing the calling party DN sent from the terminating central office equipment (step **202**). A number generator (step **204**), connected to the apparatus, generates and assigns a numeric digit or digits to each DN received to the receiver-decoder (step **203**). An alphanumeric display unit (step **205**), connected to the apparatus, displays the DN and its assigned numeric digit or digits in an LED or LCD display counter. A memory unit (step **206**), connected to the apparatus, stores the DN and its assigned digit or digits to memory for later recall and display.

In FIG. **2A**, the terminating central office equipment (step **207**) to which a called party telephone line is connected receives a calling party flagged "private" DN from originating central office equipment to which the calling party telephone line is connected. The terminating central office equipment (step **208**) responds to the receipt of the flagged "private" DN from the originating central office equipment by connecting to a voice channel of the called party busy telephone line with a call-waiting tone signal only, or by connecting to a voice channel of the called party idle telephone line with ringing signals only.

In FIG. **2B**, assuming that the called party missed the incoming call from the calling party and decides to return the missed call, the called party presses a recall button (step **209**) on the apparatus to recall the stored DN from the memory unit (step **206** of FIG. **2**) for display in the LED or LCD display counter (step **205** of FIG. **2**). The called party (step **210**) then causes the apparatus to go into an off-hook mode so as to receive dial tone from the originating central office equipment **301** of FIG. **3** and then presses the digit or digits assigned to the stored DN on a keypad (step **211**) on the apparatus. An autodialer unit (step **212**) of the apparatus responds to the digit or digits pressed on the keypad by automatically dialing the stored DN.

In FIG. **3**, is shown a simple block diagram configuration of the principal components (**303**A, **303**B, **303**C, **303**D, **303**E, **303**F, **303**G and **303**H) of an apparatus **303** (telephone set or separate stand alone unit **303**) connected via telephone lines and a RJ11 jack **302** to originating or terminating central office equipment **301**.

Dial tone detector **303**A is for detecting dial tone sent from originating central office equipment **301** responsively to an off-hook condition detected on the telephone line of apparatus **303**.

Autodialer with memory unit **303**C is for automatically dialing a prestored access code and/or a stored phone number.

7

Receiver-decoder **303**D is for receiving and decoding signals representing a calling party's DN sent from terminating central office equipment **301** during a silent interval between ringing signals or following a call-waiting tone signal.

Number generator **303**E is for generating and assigning a numeric digit(s) to each DN received via receiver-decoder **303**D.

Display unit **303**F is for displaying in an LED or LCD display counter on apparatus **303** the DN received from terminating central office equipment **301** via receiver-decoder **303**D, and for displaying in the LED or LCD display counter a stored DN when recalled from memory unit **303**G.

Memory unit **303**G is for storing to memory for later recall, display and automatic or manual dialing of the DN received from terminating central office equipment **301** via receiver-decoder **303**D.

Autodialer unit **303**H is for automatically dialing the stored DN in memory unit **303**G.

Recall button on apparatus **303** is for initiating the recall of the stored DN from memory unit **303**G for visual display in the LED or LCD display counter on apparatus **303**.

Display button, block button and keypad on apparatus **303** are for enabling programming of the apparatus **303** on a per call basis to perform a desired automatic and/or manual calling operation.

Microprocessor **303**B is for interacting with and controlling the above functions or functional devices by any known technique.

Originating central office equipment **301** is responsive to the receipt of an autodialed phone number of a person to be contacted for temporarily flagging a DN of a calling party "public" or "private" and then sending the flagged "public" or "private" DN to terminating central office equipment to which the person to be contacted telephone line is connected in the manner conventional for the Caller ID process. The originating central office equipment **301** is also for sending dial tone to a telephone station of a calling party in response to an off-hook condition detected on a telephone line of the telephone station.

Terminating central office equipment **301** is responsive to the receipt of a flagged "public" DN from originating central office equipment for connecting to a voice channel of a busy telephone line of a telephone station with a call-waiting tone signal and then transmitting the DN to an apparatus **303** at the telephone station during a silent interval after the call-waiting tone signal, or for connecting to a voice channel of an idle telephone line of the telephone station with ringing signals and then transmitting the DN to an apparatus **303** at the telephone station during a silent interval between the ringing signals. Terminating central office equipment **301** is also responsive to the receipt of a flagged "private" DN from originating central office equipment for connecting to a voice channel of a busy telephone line of a telephone station with a call-waiting tone signal only, or for connecting to a voice channel of an idle telephone line of a telephone station with ringing signals only.

While the present invention has been described in connection with preferred embodiment (s) thereof, it is to be understood that additional embodiment (s), modifications and applications that will become obvious to those skilled in the art are included within the spirit and scope of the invention.

8

What is claimed is:

**1**. A method for sending to a called station of a first party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID) and who is engaged in a telephone conversation with a second party a directory telephone number (DN) of a third party calling a telephone number of the first party, comprising the steps of:

(a) receiving at a terminating central office of the first party who subscribes to said CLASS service including said Caller ID and who is engaged in the telephone conversation with the second party the third party DN flagged as public from an originating central office of the third party indicating that said DN of the third party is to be disclosed at the called station of the first part;

(b) said terminating central office sending a call waiting (CW) tone signal to the first pay; and

(c) said terminating central office then transmitting said DN of the third party to the called station of the first party during a silent interval after said CW tone signal.

**2**. The method as set forth in claim **1**, further comprising the steps of:

(d) receiving by an apparatus at the called station of the first party during the silent interval after said CW tone signal said DN of the third party from said terminating central office of the first party;

(e) generating and associating an identifier to said received DN of the third party;

(f) displaying said received DN of the third party in a display; and

(g) storing said received DN of the third party in memory.

**3**. A method as set forth in claim **2**, wherein the apparatus is a pushbutton telephone or other receiving and sending equipment.

**4**. A method as set forth in claim **2**, wherein said generated identifier is a number.

**5**. A method as set forth in claim **1**, wherein said terminating central office is telephone company terminating central office equipment.

**6**. A method as set forth in claim **1**, wherein said terminating central office is cellular company terminating central office equipment.

**7**. A method for sending to a called station of a first party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID) and who is engaged in a telephone conversation with a second party a directory telephone number and name (DN) of a third party calling a telephone number of the first party, comprising the steps of:

(a) receiving at a terminating central office of the first party who subscribes to said CLASS service including said Caller ID and who is engaged in the telephone conversation with the second party the third party DN flagged as public from an originating central office of the third party indicating that said DN of the third party is to be disclosed at the called station of the first party;

(b) said terminating central office sending a call waiting (CW) tone signal to the first party; and

(c) said terminating central office then transmitting said DN of the third party to the called station of the first party during a silent interval following said CW tone signal.

**8**. A method as set forth in claim **7**, further comprising the steps of:

(d) receiving by an apparatus at the called station of the first party during the silent interval following said CW

9

tone signal said DN of the third party from said terminating central office of the first party and displaying said received DN of the third party in a display on the apparatus.

**9.** A method as set forth in claim **8**, wherein the apparatus is a pushbutton telephone or other receiving and sending equipment.

**10.** A method as set forth in claim **8**, further comprising the steps of:

(e) generating and associating a number to said received DN of the third party; and

(f) storing said received DN of the third party in memory.

**11.** A method as set forth in claim **7**, wherein said terminating central office is telephone company terminating central office equipment.

**12.** A method as set forth in claim **7**, wherein said terminating central office is cellular company terminating central office equipment.

**13.** A method for sending to a called station of a first party who is engaged in a conversation with a second party via a local switching office (LSO) a directory telephone number (DN) of a third party calling a telephone number of the first party, comprising the steps of:

(a) after receiving at said LSO said DN of the third party marked as public from an originating central office of the third party, indicating that said DN of the third party is to be disclosed at the called station of the first party, sending a call waiting tone signal to the first party;

(b) said LSO then transmitting to the called station of the first party said DN of the third party during a silent interval after the call waiting tone signal cycle; and

(c) receiving by an apparatus at the called station of the first party during the silent interval after the call waiting tone signal cycle said DN of the third party from said LSO and displaying said received DN of the third party on a display of the apparatus.

**14.** A method as set forth in claim **13**, wherein said LSO is telephone company terminating central office equipment.

**15.** A method as set forth in claim **13**, wherein said LSO is cellular company terminating central office equipment.

**16.** A method as set forth in claim **13**, wherein the apparatus is a pushbutton telephone or other receiving and sending equipment.

**17.** A method as set forth in claim **13**, further comprising the steps of:

(d) generating and associating an identifier to said received DN of the calling party; and

(e) storing said received DN of the calling party in memory.

**18.** A method for transmitting to a called station of a first party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID) and who is engaged in a telephone conversation with a second party a directory telephone number (DN) of a third party calling a telephone number of the first party, comprising the steps of:

(a) receiving at a terminating central office (TCO) of the first party who subscribes to said CLASS service including said Caller ID and who is engaged in the telephone conversation with the second party the third party DN flagged as public from an originating central office of the third party;

(b) said TCO sending a call waiting tone signal to the first party; and

(c) said TCO then transmitting the third party DN to the called station of the fist party.

10

**19.** A method as set forth in claim **18**, wherein said TCO is telephone or cellular company switching office equipment.

**20.** A method as set forth in claim **18**, wherein step (c) comprises the step of transmitting a corresponding name along with said DN of the third party.

**21.** A method as set forth in claim **18**, wherein said TCO transmits the third party DN to the called station of the first party during a silent interval after the call waiting tone signal.

**22.** A method as set forth in claim **18**, wherein step (c) comprises the step of connecting to a voice channel of the first party busy telephone line before said DN of the third party is transmitted to the called station of the first party.

**23.** A method for indicating to a first party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID) and who is engaged in a telephone conversation with a second party an incoming call from a third party calling a telephone number of the first party comprising the steps of:

(a) receiving at a terminating central office (TCO) of the fist party who subscribes to said CLASS service including said Caller ID and who is engaged in the telephone conversation with the second party the third party directory telephone number (DN) flagged as private from an originating central office of the third party, indicating that said DN of the third party is not to be disclosed at the first party called station; and

(b) said TCO then sending a call waiting (CW) tone signal to the first party, said CW tone signal indicates to the first party the incoming call from the third party.

**24.** A method as set forth in claim **23**, wherein said TCO is telephone or cellular company switching office equipment.

**25.** A method for transmitting to a called station of a first party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID) and who is engaged in a telephone conversation with a second party a directory telephone number (DN) of a third party calling a telephone number of the first party, comprising the steps of:

(a) receiving at a terminating central office (TCO) of the first party who subscribes to said CLASS service including said Caller ID and who is engaged in the telephone conversation with the second party the third party DN flagged as public from an originating central office of the third party, indicating that said DN is to be disclosed at the called station of the first party;

(b) said TCO sending a call waiting tone signal to the first party; and

(c) said TCO then transmitting said DN of the third party to the called station of the first party.

**26.** A method as set forth in claim **25**, wherein step (c) comprises the step of transmitting a name along with said DN of the third party to the called station of the first party.

**27.** A method as set forth in claim **25**, wherein said TCO is telephone or cellular company switching office equipment.

**28.** A method as set forth in claim **25**, wherein said DN of the third party is transmitted to the called station of the first party during a call waiting tone signal cycle silent interval.

**29.** A method as set forth in claim **25**, further comprising the steps of:

(d) receiving by an apparatus of the first party said DN of the third party from said TCO and displaying said received DN in a display on the apparatus;

11

(e) generating and associating a number to said received DN of the third party; and

(f) storing said received DN of the third party in memory.

**30**. A method as set forth in claim **25**, wherein step (c) comprises the step of connecting to a voice channel of the first party busy telephone line before said DN of the third party is transmitted to the called station of the first party.

**31**. A method as set forth in claim **25**, wherein said TCO transmits the third party DN to the called station of the first party during the call waiting tone signal cycle silent interval.

**32**. A method for sending a call waiting (CW) tone signal only to a first party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID) and who is engaged in a telephone conversation with a second party, comprising the steps of:

(a) receiving at a terminating central office (TCO) of the first party who subscribes to said CLASS service including said Caller ID and who is engaged in the telephone conversation with the second party a calling third party directory telephone number (DN) flagged as private from an originating central office of the calling third party indicating that said received DN of the calling third party is not to be disclosed at the first party called station; and

(b) said TCO then sending said CW tone to the first party.

**33**. A method as set forth in claim **32**, wherein said TCO is telephone or cellular company switching office equipment.

**34**. A method for receiving at a busy telephone station during a call waiting tone signal cycle silent interval an incoming caller directory telephone number (DN) from a corresponding name (DN) from a terminating central office (TCO), comprising the steps of:

(a) receiving at the busy telephone station during the call waiting tone signal cycle silent interval the incoming caller DN from said TCO and displaying said received DN of the incoming caller in a display;

(b) generating and associating a number to said received DN; and

(c) storing said received DN of the incoming caller in memory.

**35**. A method as set forth in claim **34**, wherein the incoming caller is a third party (call waiting caller) calling a telephone number of a first party who subscribes to a Custom Local Area Signaling System (CLASS) service including Caller Identification (Caller ID) and who is engaged in a telephone conversation with a second party.

**36**. A method of providing to a first party who is already engaged in a conversation with a second party identifying information related to a third party who wishes to converse with the first party, comprising the steps of:

(a) after receiving at a local switching office (LSO) serving the first party said identifying information marked as public from an originating central office of the third party, indicating that said identifying information related to the third party is to be disclosed at the first party called station, sending a call waiting tone signal to the first party;

(b) said LSO then transmitting to said called station of the first party said identifying information related to the third party; and

(c) receiving by an apparatus at said called station of the first party said identifying information related to the

12

third party from said LSO and displaying said received identifying information related to the third party on a display on the apparatus.

**37**. The method of claim **36**, further comprising the steps of:

(d) generating an identifier and associating said generated identifier to said received identifying information; and

(e) storing said received identifying information in memory.

**38**. A method as set forth in claim **37**, wherein step (e) comprises the step of storing said generated identifier in said memory along with said received identifying information related to the third party.

**39**. A method as set forth in claim **36**, wherein said identifying information related to the third party is transmitted to said called station of the first party during the call waiting tone signal cycle silent interval.

**40**. A method as set forth in claim **36**, wherein said identifying information related to the third party is received by the first party apparatus during the call waiting tone signal cycle silent interval.

**41**. A method as set forth in claim **36**, wherein said identifying information related to the third party is transmitted to the first party only if said identifying information is received at telephone or cellular company terminating central office equipment of the first party flagged as public from telephone or cellular company originating central office equipment of the third party, indicating that said identifying information is to be disclosed at said called station of the first party.

**42**. A method as set forth in claim **36**, wherein said identifying information is a directory telephone number of the third party.

**43**. A method as set forth in claim **36**, wherein said identifying information is a directory telephone number and name of the third party.

**44**. A method as set forth in claim **36**, wherein said identifying information is a directory name of the third party.

**45**. A method as set forth in claim **36**, wherein said identifying information related to the third party is transmitted to said called station of the first party who subscribes to a CLASS service including Caller ID and who is engaged in an existing ongoing telephone conversation with a second party.

**46**. The method of claim **36**, further comprising the steps of:

(d) the first party apparatus generating an identifier; and

(e) the first party apparatus storing said received identifying information in memory.

**47**. A method as set forth in claim **46**, wherein step (d) comprises the step of the first party apparatus associating said generated identifier to said received identifying information.

**48**. A method as set forth in claim **46**, wherein said generated identifier is a number, figure or digit which identifies and sets apart said received identifying information from other received identifying information.

**49**. A method as set forth in claim **46**, further comprises the step of the first party apparatus recalling said stored identifying information from said memory and displaying said recalled identifying information in a display if a user presses a recall button on the first party apparatus.

\* \* \* \* \*

# <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Circuit Rules 28 and 32 and Federal Rule of Appellate

Procedure 32(a)(7), setting forth the certificate of compliance with type volume

limitation, typeface requirements, and type style requirements, I certify as follows:

1. This brief complies with the type volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B) because this brief contains less than 7,000 words, excluding parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of the Federal Rule of Appellate Procedure 32(a)(5) and the type style requirements of Federal Rule of Appellate Procedure 32 (a)(6) because this brief has been prepared in a proportionally spaced typeface, using Microsoft Word 14 Times New Roman font.

Dated:  November 23, 2015

*/s/ Andrew J. Dhuey*_____
Andrew J. Dhuey
456 Boynton Avenue
Berkeley, California 94707
(510) 528-8200

# UNITED STATES COURT OF APPEALS
# FOR THE FEDERAL CIRCUIT

## PROOF OF SERVICE

I hereby certify that I served the foregoing Plaintiff-Appellant's Opening

Brief upon counsel of record for Defendants-Appellees by electronic means,

through the Federal Circuit's CM/ECF filing system for this case, on the 23th day

of November, 2015.

*/s/ Andrew J. Dhuey*_____
Andrew J. Dhuey
456 Boynton Avenue
Berkeley, California 94707
(510) 528-8200